BOTTINEAU PUBLIC SCHOOL DIS-
TRICT # 1, Plaintiff and Appellee,

v.

Celia Jo CURRIE, Defendant
and Appellant.

Civ. No. 9347.

Supreme Court of North Dakota.

Nov. 10, 1977.

Daniel J. Chapman, Bismarck, for appellant.

Benson & Schell, Bottineau, for appellee; argued by Roger D. Schell, Bottineau.

PEDERSON, Justice.

Celia Jo Currie, a teacher, appeals from a district court judgment which held that she breached her 1975–1976 contract with the Bottineau School and, accordingly, must pay $500 to the school board as liquidated damages. We reverse the judgment.

Currie fulfilled her obligation as a teacher for the 1975–1976 school term under a contract which required her to teach girls' physical education, coach girls' basketball, assist in coaching girls' track, and perform such other duties as were assigned by the administration. As a part thereof, her contract adopted board policies, which provided, in part:

"9.  Because it is impracticable or ex-
      tremely difficult to fix the actual

cost to be incurred at the time of the release request, the parties, hereto, agree that the amount presumed to be the cost of replacement shall be fixed as follows:

| Time of Release Request | Cost of Replacement: |
|---|---|
| Within the first 3 days after contract due date | $100 |
| Between 3 days after the contract due date prior to end of present school term | 250 |
| Between end of present school term to the termination date of this contract | 500 |

Nothing stated herein shall be construed as meaning that the Board must release the teacher upon payment of the above determined costs. The fee may be waived by the Board if the teacher's resignation is due to ill health, military service, or a hardship case."

Neither the contract nor the policy identify either the "contract due date," "termination date," or "present school term," as those terms are used in the board policy. The contract was executed on June 4, 1975, and states that it covers a period of nine months beginning August 29, 1975. Presumably, then, the contract was fulfilled on or about May 29, 1976.

A communication dated April 14, 1976, was received by Currie from the clerk of the school board, which stated:

"The law provides that on or before April 15 the School Board must notify you of its intention to renew your contract for next year.

"Because negotiations are still in progress as to the terms of 1976–77 contracts, the Board has decided that it is not in a position to make a final offer at this time, and therefore will simply refrain from giving notice, thus creating the automatic statutory offer to renew on the same basis as last years contract, with the understanding that if negotiations shall result in an agreement either more or less favorable to you, when such an agreement has been reached by both negotiating parties, the Board will offer you a contract in accordance with such an agreement.

"However, in order for the Board to arrange for replacements of those of you who do not wish to remain with us next year, we ask that you kindly notify the Board at the earliest possible date.

"As provided by law, failure on your part to notify us of your acceptance of contract for next year on or before May 14, 1976, will constitute a rejection of the offer."

Accompanying the above communication was a copy of § 15–47–27, NDCC, with the following provision underlined:

"<u>On or before April fifteenth in any year and not earlier than February fifteenth, all teachers shall be notified of a date, which shall not be less than thirty days after the date of such notice, upon which they will be required to accept or reject proffered re-employment, and failure on the part of the teacher to accept said offer within such time shall be deemed to be a rejection of the offer.</u>"

Also included was a blank form response as follows:

"This is to notify you of my intention:
"(Check one)
"_____ to accept the proffer of employment by the Bottineau Public School Board.
"_____ to reject the proffer of employment by the Bottineau Public School Board.

"I understand this offer is based on 'the same terms and conditions as the . . . current year (1975–76).'

"Acceptance of this offer does not eliminate
(1) the obligation of the School Board to execute a contract reflecting the terms and conditions of a new settlement if that settlement occurs . . . or . .
(2) the right of the teacher to resign from this position

without stipulated damages through May 15, 1976.

———————————————
(Signed)

———————————————
(Date)

"(Please return on or before May 14, 1976)"

Currie did not return the above form response but utilized a form dated April 5, 1976, prepared by the teachers. That response was not addressed to the school board or its clerk, but to the school superintendent. The form stated as follows:

"Subject: Letter of intent

"As an employee of the Bottineau school system

"_____ it is my intent

"_____ it is not my intent

"to return to the Bottineau Public Schools for the 1976–77 school year. . . ."

Currie checked the blank "_x_ it is my intent," and added at the end of the form, in handwriting: "provided I do not get the job I was interviewed for at the junior college. I will know definitely May 20, 1976." She then signed her name and delivered the document to the superintendent on May 14, 1976. This action by Currie amounted to a counter offer, to which the school board never responded.

On either June 3 or 4, Currie, having learned that she would not receive the junior college position, went to the superintendent's office and indicated to him that she would return to the Bottineau school. The exact language she used is somewhat disputed. The superintendent testified that she said, "Well I guess I will be back with you another year, I did not get the college job." Currie says that she was a little upset about not getting the college position, and "so I remember trying to be kind of light-hearted about the situation. I said something to the effect that they would be stuck with me, or have to put up with me for another year."

Sometime after June 4, while Currie was attending summer school at NDSU, the superintendent telephoned her and offered her the position of head track coach. The superintendent said that he had no prior approval from the school board to make this offer but that it was standard practice for the superintendent to hire and the school board to confirm. The superintendent testified that Currie said that "she would like to have the position and she would accept it." Currie testified that her response was: "I was interested . . . I never said I accept." At a school board meeting on July 13, 1976, there was a recommendation to "move Miss Currie to head Girls Track." The minutes reflect no action taken on the recommendation, however the superintendent testified that "it was moved and carried, seconded and carried unanimously, she be given the position."

The only conflicting testimony in this case concerned the exact words spoken at the June 3 or 4 meeting between Currie and the superintendent in his office, and during their subsequent telephone conversation about the head track coaching position. The trial judge made no specific finding from which we can determine whether he considered one witness more believable than the other.

Having previously discussed with him a job possibility at Minot State College, Currie made the following statement in a letter dated July 29 and received July 31 by the superintendent:

"This letter is to inform you of my intention to resign my teaching and coaching position at Bottineau effective this date.

"I have enjoyed my four years at Bottineau, but the position at Minot State College is the advancement for which I have been waiting."

The letter was read at the school board's August 2 meeting, after which there was a motion made, seconded and carried that ". . . we accept Miss Currie's resignation but the stipulated damage clause would apply." Currie was notified of the school board action in a letter dated August 3 from the superintendent, which stated:

"It is the feeling of the Board that if the continuing contract law and your letter

of intent are binding upon the School Board, that they should also be binding upon the teacher and therefore the stipulated damages clause would be in effect. As this is a late resignation, the cost of replacement is stipulated at $500.00 in accordance with Article 9 of the Bottineau School Board Policy as amended June 3, 1975."

We are not told in the record, or otherwise, whether the June 3 amendment to the school board policy, referred to in the superintendent's letter, related to any matter at issue in this case, so we presume that it did not. Currie's reply of August 21 stated: "Since I had not signed a contract for the 1976–77 school year at the Bottineau Public Schools, I do not believe the stipulated damages clause pertains in my situation." This letter was read at a school board meeting of August 23. The minutes of that meeting state: "The Board felt, if a letter of intent was binding on a School Board, it was just as binding for a teacher." A motion "to respond" was made, seconded and carried. In a letter dated August 24, the superintendent responded to Currie by stating, in part: ". . . it is still their feeling that the continuing contract law in the State of North Dakota is binding upon both the teacher and the School Board and therefore the stipulated damages clause is appropriate and it is their intent to follow up on this matter."

The record discloses that negotiations for 1976–1977 contract terms were in process between the school board and the Bottineau Teachers Association (presumably pursuant to the authorization of Chapter 15–38.1, NDCC), and that those negotiations resulted in an agreement on August 5, 1976, covering the 1976–1977 school term. We are not informed as to any of the terms agreed upon.

Currie continued to refuse to pay the stipulated damages and suit was brought. After a trial to the court without a jury, the court found as a fact that Currie intended to accept a job under the continuing contract provisions of § 15–47–27, NDCC, and that Currie caused damages to the school board, pursuant to the stipulated damages clause of the continuing contract. The court made a conclusion of law that the 1975–1976 contract, including the liquidated damages clause, was binding on both parties pursuant to the continuing contract provisions of § 15–47–27, NDCC.

■ We are not bound by the labels used by the trial court in its findings of fact and conclusions of law. *Jahner v. Jacob*, 233 N.W.2d 791 (N.D.1975). Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. Rule 52(a), NDRCivP. There is no exemption from the applicability of Rule 52(a) to cases merely because they involve a school board-teacher dispute. See *Edgeley Ed. Ass'n v. Edgeley Pub. Sch. Dist.*, 256 N.W.2d 348, 352 (N.D.1977).

■ Whether a contract with the same terms as the 1975–1976 contract was, in this case, created under the provisions of § 15–47–27, NDCC, and whether Currie's expression of intent to accept the offer by the school board created a binding contract with the same terms as the 1975–1976 contract are questions of law. Conclusions of law are not fortified by the "clearly erroneous" rule applicable to findings of fact. *Northwestern Bell T. Co. v. Board of Com'rs of Fargo*, 211 N.W.2d 399 (N.D. 1973).

The letter of notice sent by the clerk of the school board to Currie, and the other professionally certified staff members, does purport to advise that, by simply refraining from giving notice, the board was "creating the automatic statutory offer to renew on the same basis as last years contract," with the understanding that if negotiations resulted in agreement, a contract would be offered by the board in accordance with such agreement. It further expresses a very valid and understandable purpose in noting that, in order to arrange for replacements, there was need to know at the earliest possible date which teachers did *not* wish to return the next year.

The letter is patently ambiguous. See *Harney v. Wirtz*, 30 N.D. 292, 152 N.W. 803 (1915). The school board asks that we apply only one aspect of the letter and thus ignore those aspects which make it ambiguous. This we cannot do. Section 9–07–19, NDCC, which directs that ambiguous public contracts be interpreted against a private party, cannot be applied to offers to contract. When there is a mutual assent as to the terms of an offer and an acceptance, a contract exists. See *Amann v. Frederick*, 257 N.W.2d 436, 439 (N.D.1977).

We next look to the supposed acceptance by Currie. Her response stated that it was her intent to return. Only an expression of intent was requested. In *Hayashi v. Ihringer*, 79 N.D. 625, 58 N.W.2d 788, 791 (1953), this Court said:

"A mere statement of an intention to act in a certain way is not a promise upon which a contract can be predicated." [Citations omitted.]

"Care should be taken not to attach promissory and contractual effect to what was at the time merely an expression of intention concerning future action." 58 N.W.2d at 791, quoting from *Carlson v. Krantz*, 172 Minn. 242, 247, 214 N.W. 928, 930, 54 A.L.R. 545 (1927).

Although contracts may be "implied," as well as "express" (§ 9–06–01, NDCC), because of the ambiguity as to what was offered and the expression of only an intent to accept, we do not find that a contractual obligation was created, either directly or by implication, which can be enforced in an action at law or equity. See generally, *Geiss v. Northern Insurance Agency*, 153 N.W.2d 688 (N.D.1967). See also, *Greenberg v. Stewart*, 236 N.W.2d 862 (N.D.1975).

The ambiguity of the documents which were given to Currie and the responses from her lead to serious questions as to what contract terms would have result. We hold that, on the facts presented in this case, no contract was made. We are not unmindful that this decision, in finding a letter of intent not binding upon a teacher, may bring into question the effect of documents heretofore considered to be a very important part of the contracting process between school boards and teachers. The courts do not draft the documents but must try to give effect to those drafted by the parties.

The school board should not be faulted. The existence of § 15–47–27, NDCC, which has not been changed so as to make it always compatible with proceedings for negotiation of contract terms pursuant to Chapter 15–38.1, NDCC, has been the cause of a continuing series of disputes. We previously said that there was a dire need for legislation delineating and making appropriate adjustments between the two statutes. *Edgeley Ed. Ass'n v. Edgeley Pub. Sch., Etc.*, 231 N.W.2d 826 (N.D.1975).

We reverse the judgment and, on remand, direct entry of a judgment of dismissal. Because the case involves a matter of public concern, neither party will be allowed costs.

ERICKSTAD, C. J., and PAULSON, SAND and VOGEL, JJ., concur.