268 N.W.2d 126 (1978)
Mavis ENSTAD, Plaintiff-Appellant,
v.
NORTH CENTRAL OF BARNES PUBLIC SCHOOL DISTRICT NO. 65, a Public Corporation, Defendant-Appellee.
Civ. No. 9457.
Supreme Court of North Dakota.
July 7, 1978.
*128 Chapman & Chapman, Bismarck, for plaintiff and appellant; argued by Daniel J. Chapman, Bismarck.
Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, and Ployhar, Thorson & Weisenburger, Valley City, for defendant and appellee; argued by David F. Knutson, Fargo.
PAULSON, Justice.
This is an appeal by the plaintiff, Mavis Enstad, from the judgment of the Barnes County District Court, entered on December 7, 1977, in which the court dismissed, with prejudice, Enstad's action against the defendant, North Central of Barnes Public School District No. 65, a public corporation (hereinafter North Central).
Enstad was employed as a teacher at North Central during the 1973-1974, 1974-1975, and the 1975-1976 school terms. During the 1973-1974 term she taught English and physical education classes and coached girls' track. She was also supervisor for the cheerleaders and the pompon girls. During the 1974-1975 and 1975-1976 terms she was assigned the same duties at North Central with the exception that she was not assigned to coach the girls' track team. On May 17, 1976, a written offer of reemployment for the 1976-1977 term was delivered to Enstad which included the same teaching assignments she held during the current school term plus the additional assignment of coaching girls' basketball. On June 11, 1976, Enstad sent a letter to the North Central Board of Education in which she accepted the offer of reemployment for the 1976-1977 school term but rejected the assignment to coach girls' basketball. The North Central Board of Education informed Enstad by letter, on June 18, 1976, that "Your counter-offer contained in your letter of June 11, 1976, is not acceptable and is rejected". The letter further informed Enstad that unless she accepted the offer of reemployment for the 1976-1977 school term, including the girls' basketball coaching assignment, the Board would consider her position open and would employ another person to fill the position. Enstad refused to accept the offer with the coaching assignment. Consequently, she was not employed at North Central during the 1976-1977 school term, and another teacher was hired to fill the position.
On February 14, 1977, Enstad filed an action against North Central alleging that North Central acted wrongfully and illegally when it failed to reemploy her as a teacher for the 1976-1977 school term. Enstad asserted before the district court, and she asserts now on appeal, that she was unqualified to coach girls' basketball and that, pursuant to Section 15-47-27 of the North Dakota Century Code, she was entitled to a contract of reemployment at North Central without the coaching assignment. North Central asserts that Enstad lost whatever rights she may have had under Section 15-47-27, N.D.C.C., when she failed to give written notice of acceptance of reemployment to North Central on or before May 15, 1976. North Central further asserts that it was reasonable for the school board to include the additional assignment of coaching girls' basketball in Enstad's offer of reemployment and that, upon rejecting such offer, Enstad had no additional reemployment rights under the laws of this state.
On July 21, 1977, a trial was held before the Barnes County District Court, without a jury. The court filed findings of fact and conclusions of law on December 7, 1977, in which the court concluded that North Central had neither violated North Dakota law nor breached any contractual duty with regard to Enstad's nonreemployment for the 1976-1977 school term. Accordingly, judgment was entered dismissing, with prejudice, Enstad's action for damages against North Central.
The following issues are before this court on Enstad's appeal from the district court's judgment:
(1) Whether or not Enstad lost whatever rights she may have had under Section 15-47-27, N.D.C.C., when she failed to give written notice of acceptance of reemployment to North Central on or before May 15, 1976; and

*129 (2) Whether or not Enstad's rights were violated by North Central when her offer of reemployment for the 1976-1977 school term was conditioned upon her acceptance of the additional assignment of coaching girls' basketball.
It is undisputed that negotiations occurred between North Central and the teachers' representative organization, the North Central Education Association, under Chapter 15-38.1, N.D.C.C., regarding contracts for the 1976-1977 school term, and that contract offers were not delivered to the teachers at North Central until May 17, 1976. It is also undisputed that North Central did not give Enstad written notice on or before April 15, 1976, of a determination not to renew her contract for the ensuing 1976-1977 school term. Nor did North Central give Enstad notice on or before April 15, 1976, of a date upon which she must accept or reject proffered reemployment. It is also undisputed that Enstad did not give written notice to the North Central school board on or before May 15, 1976, of acceptance of reemployment. Enstad asserts that she had a right to reemployment for the 1976-1977 school term, under Section 15-47-27, N.D.C.C., when North Central failed to give her written notice by April 15, 1976, of a determination not to renew her contract. North Central asserts that Enstad lost her rights to reemployment under Section 15-47-27, N.D.C.C., when she failed to give notice of acceptance of reemployment on or before May 15, 1976.
Section 15-47-27, N.D.C.C., provides as follows:
"Time for renewal of teachers' contracts. Any teacher who has been employed by any school district or the director of institutions in this state during any school year, shall be notified in writing by the school board or the director of institutions, as the case may be, not earlier than the fifteenth day of February and not later than the fifteenth day of April in the school year in which he or she has been employed to teach, of the determination not to renew the teacher's contract for the ensuing school year, if such determination has been made; and failure to give such written notice on or before said date shall constitute an offer to renew the contract for the ensuing school year under the same terms and conditions as the contract for the then current year. On or before April fifteenth in any year and not earlier than February fifteenth, all teachers shall be notified of a date, which shall not be less than thirty days after the date of such notice, upon which they will be required to accept or reject proffered re-employment, and failure on the part of the teacher to accept said offer within such time shall be deemed to be a rejection of the offer. Any teacher who shall have accepted the offer of re-employment, either by the action or nonaction of the school board or the director of institutions, on or before April fifteenth, as herein provided, shall be entitled to the usual written contract for the ensuing school year, as provided by law and shall notify the school board or the director of institutions in writing of his or her acceptance or rejection on or before the date specified or before May fifteenth, whichever is earlier. Failure on the part of the teacher to provide such notification shall relieve the school board or the director of institutions of the continuing contract provision of sections 15-47-26 through 15-47-28. Nothing in this section shall be construed as in any manner repealing or limiting the operation of any existing law with reference to the dismissal of teachers for cause."
In Dickinson Education Association v. Dickinson Public School District No. 1, 252 N.W.2d 205 (N.D.1977) this court concluded that the provisions of Chapter 15-38.1, N.D. C.C., require the conclusion of a good faith negotiation process by the parties before a school board is permitted to make contractual offers to the teachers in its school system. However, Section 15-47-27, N.D. C.C., provides that failure of the school board to give written notice to a teacher on or before April 15 of a determination not to renew the teacher's contract for the ensuing school year "shall constitute an offer to *130 renew the contract for the ensuing school year under the same terms and conditions as the contract for the then current year". When the contract negotiation process continues past the April 15 date, as it did in the instant case, an incompatible situation arises under Section 15-47-27, N.D.C.C. and Chapter 15-38.1, N.D.C.C. The school board is not permitted to make contract offers to its teachers prior to the conclusion of the negotiation process. Yet, under Section 15-47-27, N.D.C.C., a statutory offer to renew the teacher's contract automatically arises after April 15, unless the teacher has received a written notice of nonrenewal.[1]
North Central asserts that the teacher must give written notice of acceptance of the statutory offer of contract renewal by May 15; otherwise the teacher loses all rights to reemployment under Section 15-47-27, N.D.C.C. We disagree. The interpretation urged by North Central could place a teacher in the unreasonable position of having to give written acceptance to the statutory offer of reemployment prior to the conclusion of the negotiation process. Such an interpretation could result in the loss of reemployment rights by unsuspecting teachers who are rightfully anticipating contract offers upon completion of the good faith negotiation process only to discover that they have no reemployment rights because the May 15 date has passed and they have not sent an acceptance notice to the school board. We do not believe such an unreasonable result was intended by the legislature. Within Section 15-47-27, N.D.C.C., the legislature imposed the following duty upon the school boards:
"On or before April fifteenth in any year and not earlier than February fifteenth, all teachers shall be notified of a date, which shall not be less than thirty days after the date of such notice, upon which they will be required to accept or reject proffered re-employment, and failure on the part of the teacher to accept said offer within such time shall be deemed to be a rejection of the offer."
We interpret this provision as imposing a duty upon the school board to give notice, on or before April 15, to all teachers of their duty to accept reemployment by the specified date. The provision clearly expresses an intent to give a teacher not less than thirty days to accept reemployment from the date the teacher receives such notice from the school board. Upon construing Section 15-47-27, N.D.C.C., as a whole, it is clear that the language requiring the teacher to accept by May 15 was inserted in conjunction with the language requiring the school board to send written notice to the teacher, on or before April 15, of the date upon which the teacher must accept reemployment. Assuming a school board complies with its duty to notify the teacher by April 15, the May 15 date by which the teacher is required to accept reemployment does allow the teacher a full thirty-day acceptance period. We conclude that under Section 15-47-27, N.D.C.C., a teacher is entitled to not less than thirty days to accept proffered employment and, providing negotiations have been in progress, that such thirty days does not commence to run until the teacher is given notice by the school board informing the teacher of a date upon which she is required to accept or reject proffered reemployment. Providing negotiations have not been in progress, failure on the part of the school board to provide the teacher, prior to April 15, with notice of an acceptance date voids operation of the May 15 date under the statute by which the teacher must accept reemployment, and the teacher will have not less than thirty days to accept proffered reemployment from the date the school board actually notifies the teacher of a date upon which acceptance must be made.
*131 In Huso v. Bismarck Public School Board, 219 N.W.2d 100 (N.D.1974), negotiations under Chapter 15-38.1, N.D.C.C., were not in progress. In this respect Huso is distinguishable from the instant case. Where negotiations are being carried on pursuant to Chapter 15-38.1, N.D.C.C., the provisions of Section 15-47-27, N.D.C.C., requiring the board to give the teacher notice and that the teacher respond to such notice are suspended.
In the instant case, North Central failed to notify Enstad on or before April 15, 1976, of a specific date by which she must accept proffered reemployment. Consequently, we hold that Enstad did not lose her rights to reemployment under Section 15-47-27, N.D.C.C., by her failure to give written notice of acceptance to North Central on or before May 15, 1976.
The second issue before this court is whether Enstad's rights were violated by North Central when her offer of reemployment for the 1976-1977 school year was conditioned upon her acceptance of the additional assignment of coaching girls' basketball.
Both parties agree that upon failure of the school board to give written notice of nonrenewal on or before April 15 of the current school year, a teacher has a right to a contract of reemployment for the ensuing school year under Section 15-47-27, N.D. C.C. North Central requests this court to interpret this statute as entitling a teacher only to an offer of a reasonable contract for the ensuing school year which may include reasonable changes of assignment by the school board. Enstad would also have this court construe this statute as allowing reasonable changes in contract assignments for the ensuing school year. Enstad asserts, however, that the contract offered to her for the 1976-1977 school term was unreasonable because it contained the additional assignment of coaching girls' basketball, which Enstad asserts is an unreasonable assignment she was not qualified to perform.
This issue requires this court to first construe Section 15-47-27, N.D.C.C., to determine whether a teacher's reemployment rights under the section are complied with when a school board offers a contract containing reasonable changes of assignments.
Both parties in the instant case have cited the case of McCullough v. Cashmere School Dist. No. 222, 15 Wash.App. 730, 551 P.2d 1046 (1976) to support their position. Upon Shepardizing the McCullough, supra, case we have found that it was overruled by the Washington Supreme Court in Barnes v. Seattle School Dist. No. 1, 88 Wash.2d 483, 563 P.2d 199 (1977). Since both cases have similar fact situations to that which exists in the instant case we believe it is appropriate to briefly discuss both cases.
McCullough, supra, involved two teachers whose offers of reemployment by the school district included additional assignments of extracurricular duties which neither teacher had been assigned during the current school year. One teacher was given an additional assignment to coach girls' track and girls' basketball. The other teacher was given the extracurricular duty of coaching seventh, eighth, and ninth grade girls' basketball. The teachers refused to accept the contract offers with the additional coaching assignments, asserting that such assignments by the district placed an invalid condition on the teachers' statutory right of reemployment under Washington's Continuing Contract Law, RCW 28A.67.070.[2] The *132 Court of Appeals of Washington made the following statement in McCullough, supra, 15 Wash.App. 730, 551 P.2d at 1049-1050:
"The continuing contract law guarantees an offer of reemployment, but not the exact contractual terms of the offer. To hold otherwise would be to inhibit the district's administrative responsibility to the public by creating in the teacher the right to teach a particular class or at a particular school within the district. Of necessity, the district must be able to adapt to changes in enrollment, curriculum, available money, and other circumstances by changing teacher assignments.
"However, there is within the continuing contract law the essential implication that every offer for reemployment, which includes curricular assignments, must be a reasonable offer. A rule of reasonableness must be implied in the continuing contract law so that that law does not become a sword or subterfuge in the hands of the district, defeating the intent of the legislature to create job security. All parts of an offer for reemployment, curricular and extracurricular, must be within the education, professional preparation, and experience of the teacher. The offer may not be of such extended hours or other adverse conditions as to make the offer unreasonable and hence unacceptable. Nor may the offer be one which bears no reasonable relation to a legitimate educational purpose. If a rule of reasonableness were not implied in the continuing contract law, that law would be a nullity by allowing arbitrary dismissal after April 15 through an unreasonable offer of reemployment."
The Washington Court of Appeals held that teachers may be required to assume reasonable extracurricular duties as a condition of reemployment. The Court of Appeals further held that the additional coaching assignments imposed upon the teachers in the case were reasonable conditions of reemployment and that the school district had fully complied with the requirements of the continuing contract law. Accordingly, the Court of Appeals concluded that, upon the teachers' refusal to accept their offers of reemployment, the school district was free to hire persons to replace the teachers.
The case of Barnes v. Seattle School Dist. No. 1, 88 Wash.2d 483, 563 P.2d 199 (1977), involved a distinguishable fact situation from that which existed in McCullough supra. In Barnes, supra, a number of certificated administrative personnel of the school district received notice that their present contract status as administrators was being changed, and they were offered contracts for the ensuing school year to assume duties as teachers at severe reductions in salary. The Washington Supreme Court held that under Washington's Continuing Contract Law [RCW 28A.67.070; see Note 2, supra] these certificated personnel had a right to contracts "containing substantially identical terms and conditions" as existed under their current contracts. The court held that the contracts offered by the school district did not afford these personnel the rights guaranteed to them under the statute. The court then stated in Barnes, supra, 563 P.2d at 202:
"Our interpretation of the statute requires that language to the contrary contained in the opinion of the Court of Appeals in McCollough [sic] v. Cashmere School Dist. 222, 15 Wash.App. 730, 551 P.2d 1046 (1976), be overruled."
It appears to this court that the rationales found in both McCullough and Barnes, supra, are compatible with each other. The courts reached different conclusions based on entirely separate and distinguishable fact situations. One might conclude, based upon the Washington Supreme Court's statements in Barnes, supra, that a teacher in Washington, who has rights under the continuing contract statute of that State, is subject to reasonable extracurricular reassignments providing the contract offered constitutes an offer containing "substantially identical contractual terms and conditions" as existed under the teacher's current contract of employment.
The case of Collins v. Wakonda Independent School Dist. # 1, 252 N.W.2d 646 (S.D. 1977) involved South Dakota's Continuing *133 Contract Law which is very similar to ours. The South Dakota law provides that failure of the Board of Education to notify a teacher of nonrenewal on or before April 1 "shall constitute an offer on the part of the board to renew the contract for the ensuing school year under the same terms and conditions as the contract for the then current year". In Collins, supra, the teacher had taught the fourth grade within the school district for eighteen years. The school board offered her a contract for the ensuing school year to teach seventh and eighth grades. The teacher refused to accept that contract offer asserting that she was not qualified to teach the seventh or eighth grade although she was certified to teach those grades. The South Dakota Supreme Court concluded that the contract offer was a reasonable one and that the teacher's refusal to accept the contract terminated her reemployment rights with the district. The court stated in Collins, supra, 252 N.W.2d at 647-648:
"The purposes of the Continuing Contract Law are to provide teachers security in employment and to prevent dismissal of a teacher without cause. The employment protected is the right to continued employment within the school district in a teaching position for which the teacher is qualified. Moreover, the position offered in the new contract must not be a demotion, as compared to the teaching position held under the existing contract. [Citations omitted.]
"By the Continuing Contract Law the legislature did not, however, intend to grant the teacher a vested right to a specific school or to a specific class level of students within any school, in the district. The school board must be able to adapt to changes in enrollment, curriculum, available money, and other circumstances in determining the re-employment contract which is to be offered."
The case of Goodwin v. Bennett County High School Independent School District, 226 N.W.2d 166 (S.D.1975), involved a teacher who had been employed with the school for two years as both a teacher and coach. The school board offered the teacher a contract for the ensuing school year which did not include any coaching assignment. The South Dakota Supreme Court held that the school board had the right to reassign and change the teacher's duties and that such contract offer satisfied the teacher's reemployment rights under the South Dakota Continuing Teacher Contract Law. The South Dakota Supreme Court stated in Goodwin, supra, 226 N.W.2d at 168-169:
"While Goodwin was entitled to an automatic renewal of his contract to teach, he is nevertheless subject to the authority of the school board under its general powers to direct and manage the schools of the district and the employees employed therein.
"A teacher, in acquiring a permanent status, does not thereby acquire a vested right to teach any certain class or in any certain school. The tenure laws do not interfere with the general power and right of school authorities to assign teachers to particular classes and to particular schools in accordance with their judgment and desire reasonably exercised. Such laws do not take from school authorities their incidental powers, originally to assign and subsequently to transfer a teacher to such classroom, such building, and such division as it may determine to be for the best interest of the school as long as the teacher is not thereby demoted in violation of the laws. [Citations omitted.] The power to transfer or reassign must be exercised in good faith and for the best interest of the school district, and must not be on an arbitrary and capricious basis or for the purpose of compelling a teacher's resignation. [Citation omitted.]" [Emphasis in original.]
The following cases also support the general proposition that school authorities have the right to make reasonable assignments and reassignments of a teacher's class assignments and extracurricular duties. Richards v. Board of Education Joint School Dist. No. 1, Sheboygan, 58 Wis.2d 444, 206 N.W.2d 597 (1973); Board *134 of Education, Tucson High School Dist. No. 1 v. Williams, 1 Ariz.App. 389, 403 P.2d 324 (1965); Pease v. Millcreek Township School Dist., 412 Pa. 378, 195 A.2d 104 (1963); Mitchell v. Board of Trustees of Visalia Union High School, 5 Cal.App.2d 64, 42 P.2d 397 (Dist.Ct.App.1935).
The rationales of the foregoing cases, in particular Collins, supra, and Goodwin, supra, provide helpful guidelines for interpreting Section 15-47-27, N.D.C.C.
Pursuant to Section 15-47-27, N.D. C.C., failure of the school board to notify a teacher, in writing, on or before April 15 of a determination not to renew her contract for the ensuing school year constitutes an offer to renew the contract for the ensuing school year "under the same terms and conditions as the contract for the then current year". Pollock v. McKenzie County Public School Dist. # 1, 221 N.W.2d 521 (N.D. 1974); Hennessy v. Grand Forks School Dist. # 1, 206 N.W.2d 876 (N.D.1973). Section 15-47-27, N.D.C.C., further provides that acceptance of the offer by the teacher entitles the teacher "to the usual written contract for the ensuing school year". Henley v. Fingal Public School Dist. # 54, 219 N.W.2d 106 (N.D.1974).
We construe Section 15-47-27, N.D.C.C., to require that the school board's offer of reemployment must be a reasonable offer made in good faith. The offer of reemployment cannot impose unreasonable terms, conditions, or changes in assignments from those in the teacher's current contract. However, this section does not grant a teacher the right to an offer of reemployment consisting of the identical contract as the teacher possesses during the current school term. This section does not divest the school board of its authority to make changes in assignments of classes or extracurricular duties in its role of operating and maintaining the school system. If the school board makes a reasonable, good faith offer of reemployment to the teacher, the teacher can choose to accept or reject such offer. If the teacher rejects the reasonable offer she has no further reemployment rights under Section 15-47-27, N.D. C.C. If the school board's offer of reemployment is unreasonable the teacher can reject such offer and, upon doing so, continue to have an enforceable right to reemployment against the school board under Section 15-47-27, N.D.C.C.
The ultimate question which this court must determine regarding this issue is whether North Central's offer of reemployment to Enstad, which included the additional assignment of coaching girls' basketball, was a reasonable offer in compliance with Section 15-47-27, N.D.C.C. Enstad does not contend that the offer of reemployment was unreasonable for reasons such as that it imposed an excessive workload or time demand upon her, that it involved inadequate compensation, or that it was made in bad faith. Consequently, it is unnecessary to consider such factors in determining whether Enstad received a reasonable offer of reemployment from North Central. Enstad's assertion that North Central's offer was unreasonable is based only upon the ground that she was unqualified to coach girls' basketball and that the coaching assignment was therefore unreasonable.
The district court made the following findings of fact pertinent to this issue:
"VIII.
"The defendant school district acted in good faith and in a reasonable manner in selecting the plaintiff as the person to be assigned the girls basketball coaching duty and acted in good faith and in a reasonable manner in offering a renewal of her contract for the year 1976 to 1977 with the addition of the girls basketball coaching duty.
* * * * * *
"X.
"The Court finds that the evidence indicates that the plaintiff was qualified to assume the duties of a girls basketball coach. The Court further finds that the Plaintiff's decision to reject the offered contract with the additional coaching duty was based upon personal choice and for personal reasons."
*135 The district court's findings of fact will not be set aside by this court on appeal unless they are clearly erroneous pursuant to Rule 52(a) of the North Dakota Rules of Civil Procedure. Bottineau Public School Dist. # 1 v. Currie, 259 N.W.2d 650 (N.D.1977). We conclude there is substantial evidence in the record to support the foregoing findings of fact of the district court.
The evidence presented to the district court reveals the following undisputed credentials which Enstad possessed at the time she was assigned to coach girls' basketball at North Central:
(1) Enstad has a double major in physical education and English;
(2) Enstad taught physical education classes at North Central for three years, part of which instruction included teaching the rules and fundamentals of basketball;
(3) Enstad coached the girls' track team at North Central during the first year of her employment at that school;
(4) Enstad had a college course in team sports which included the sport of basketball;
(5) Enstad played "6 girl" basketball on a Women's Recreation Association during her years at college;[3] and
(6) Enstad played "6 girl" basketball during the eighth grade and also during her freshman year at high school.
The Education Superintendent at North Central testified as follows regarding the necessary qualifications to coach high school sports within this state:
"Q. Mr. Olson, in this connection I don't suppose there are any departments of public instruction requirements with regard to coaching basketball or football or track; are there?
"A. No, there aren't. In fact the only recommendations we get are through the North Dakota High School Activities. And all they sayand it's pretty broad that is any certified teacher who is on the staff is in their eyes is qualified to coach."
Perhaps there will be a time in the future when accredited high schools in this State, by legislative mandate, will be required to hire high school athletic coaches possessing specific qualifications exceeding those possessed by Enstad at the time of her offer to coach at North Central. Apparently, no such requirement currently exists in this State. In the absence of such qualification requirements for coaching high school athletics this court certainly cannot conclude, based upon the record before us, that the district court was clearly erroneous in its findings that Enstad was qualified to assume the duties of a girls' high school basketball coach and that it was reasonable for the school board to assign Enstad the additional duty of coaching girls' basketball. There is substantial evidence in the record for one to conclude that Enstad possessed sufficient qualifications and experience to be assigned the duty of coaching a girls' high school basketball team.
We hold that North Central offered Enstad a reasonable contract of reemployment for the 1976-1977 school term in compliance with the provisions of Section 15-47-27, N.D.C.C. Upon Enstad's rejection of that offer of reemployment she had no further reemployment rights under Section 15-47-27, N.D.C.C.
In accordance with this opinion, the judgment of the district court is affirmed.
ERICKSTAD, C. J., and PEDERSON, VOGEL and SAND, JJ., concur.
NOTES
[1] More than once this court has expressed the need for legislative action to correct the incompatibility between Section 15-47-27, N.D.C.C., and the proceedings for negotiation of contract terms under Chapter 15-38.1, N.D.C.C. Bottineau Public School District # 1 v. Currie, 259 N.W.2d 650 (N.D.1977); Edgeley Education Association v. Edgeley Public School District # 3, 231 N.W.2d 826 (N.D.1975).
[2] The statute provides in pertinent part as follows: "Every board of directors determining that there is probable cause or causes that the employment contract of an employee should not be renewed by the district for the next ensuing term shall notify that employee in writing on or before April 15th preceding the commencement of such term of that determination of the board of directors, which notification shall specify the cause or causes for nonrenewal of contract. . . .

. . . If any such notification or opportunity for hearing is not timely given by the district, the employee entitled thereto shall be conclusively presumed to have been reemployed by the district for the next ensuing term upon contractual terms identical with those which would have prevailed if his employment had actually been renewed by the board of directors for such ensuing term."
[3] It should be noted that Enstad's offer to coach girls' basketball at North Central was to coach the sport of "5 girl" basketball, the rules for which differ from the "6 girl" basketball game.