**LEFOR EDUCATION ASSOCIATION, and Evelyn Fleck, Judy Saville, Jim La-Duke, and Camey Swanson, as Individuals, Plaintiffs and Appellants,**

v.

**LEFOR PUBLIC SCHOOL DISTRICT NO. 27, a public corporation, and Duane Grundhauser, Paul Schiwal, Joe Jordan, Terrance Rohr and John Hollinger, as members of the school board of Lefor Public School District No. 27 and as Individuals, Defendants and Appellees.**

Civ. No. 9598.

Supreme Court of North Dakota.

Aug. 22, 1979.

Rehearing Denied Sept. 26, 1979.

---

Daniel J. Chapman, of Chapman & Chapman, Bismarck, for plaintiffs and appellants.

Ward M. Kirby, of Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendants and appellees.

VANDE WALLE, Justice.

The Lefor Education Association and its four members ("teachers") appeal from a district court judgment on behalf of Lefor Public School District No. 27 and its five school board members ("school board"). We affirm.

This is yet another chapter in the seemingly endless saga of the interpretation of Section 15–47–27, N.D.C.C., the so-called continuing contract law, and Chapter 15–38.1, N.D.C.C., the Teachers' Representation and Negotiation Act. While the conflict between the teachers and the school board could, as we will note later herein, easily have been settled by a minor concession on the part of either side to the controversy after the completion of negotiations, both sides chose to adopt an inflexible stance and submit the issue to the courts for determination.

In 1977 the teachers and the school board were involved in negotiations pursuant to the provisions of Chapter 15–38.1, N.D.C.C. Negotiations were not completed by May 15, and on June 1 an impasse was declared by both sides. On June 7 the matter was referred to the State Educational Fact Finding Commission, and on the same day the school board sent a letter to the teachers advising them that their positions were open under the provisions of Section 15–47–27, N.D.C.C.[1] That letter read as follows:

"This letter is to inform you that according to Section No. 15–47–27 of the North Dakota Century Code, you did not

---

1. Section 15–47–27, N.D.C.C., provides:

    "Any teacher who has been employed by any school district or the director of institutions in this state during any school year, shall be notified in writing by the school board or the director of institutions, as the case may be, not earlier than the fifteenth day of February and not later than the fifteenth day of April in the school year in which he or she has been employed to teach, of the determination not to renew the teacher's contract for the ensuing school year, if such determination has been made; and failure to give such written notice on or before said date shall constitute an offer to renew the contract for the ensuing school year under the same terms and conditions as the contract for the then current year. On or before April fifteenth in any year and not earlier than February fifteenth, all teachers shall be notified of a date, which shall not be less than thirty days after the date of such notice, upon which they will be required to accept or reject proffered re-employment, and failure on the part of the teacher to accept said offer within such time shall be deemed to be a rejection of the offer. Any teacher who shall have accepted the offer of re-employment, either by the action or nonaction of the school board or the director of institutions, on or before April fifteenth, as herein provided, shall be entitled to the usual written contract for the ensuing school year, as provided by law and shall notify the school board or the director of institutions in writing of his or her acceptance or rejection on or before the date specified or before May fifteenth, whichever is earlier. Failure on the part of the teacher to provide such notification shall relieve the school board or the director of institutions of the continuing contract provisions of sections 15–47–26 through 15–47–28. Nothing in this section shall be construed as in any manner repealing or limiting the operation of any existing law with reference to the dismissal of teachers for cause."

notify the Board in writing of your acceptance to come back for the next school term and so your position is open for the elementary grades.

"If you wish, you may apply for your position."

The school board, in Vacancy Bulletin No. 22, issued by the Placement Office of Dickinson State College on June 9, 1977, did list five positions open in the Lefor School District although only four teachers had been employed for the 1976–1977 school year.

On June 17, 1977, the teachers, by summons and complaint, instituted an action against the school board. In the complaint they alleged that the action of the school board in sending the letter of June 7 was an act of bad faith because negotiations had not yet been completed and that the school board had acted "wilfully, knowingly, aggressively and maliciously with disregard for the statutory rights" of the teachers. In the complaint the teachers asked for an injunction restraining the school board from taking any action to deprive the teachers of their rights under Chapter 15–38.1, N.D. C.C., including an order enjoining the opening of the teaching positions of the individual teachers, a mandatory injunction requiring the school board to negotiate in good faith pursuant to the terms of Chapter 15–38.1 and a judgment against the school board for damages of $10,000 and punitive damages of $15,000. On June 28, an affidavit and application for order to show cause was served on the school board by the teachers and on June 30 an order to show cause why the school board should not be "enjoined and restrained from taking action in its apparent intention to fill the teaching positions held by the Plaintiff-members of the Lefor Education Association . . ." was issued by the district court. A hearing on the order to show cause was set for July 5 and continued to July 11 by agreement of the parties. On July 11 the district court refused to issue the injunction, stating, in part:

"[T]he letters written by the President of the Lefor School Board to the individual teachers on June 7, 1977 posed no threat to them, merely announcing that each individual teacher had failed to comply with requirements of Section 15–47–27 of the North Dakota Century Code, and inviting them to apply for teaching positions if they so desired. Likewise, the Court finds and determines that the giving of notice of vacancy constitutes no threat to the Plaintiffs since the statute is self-executing and since the representatives of the school district are continuing to bargain with the teachers on conditions of employment, and as indicated, a meeting with the Fact Finding Commission was scheduled to be held since the parties had agreed that an impasse had been reached in the negotiations, such meeting with the Fact Finding Commission being set for 1 o'clock p. m. on July 11, 1977 at the Lefor Public School, Lefor, North Dakota."

The Fact Finding Commission did make recommendations to the teachers and the school board. Subsequently, the parties met at least three more times before finally reaching an agreement on August 2. At that time the teachers were requested to submit written applications for the positions that the school board had declared vacant. The teachers were notified by the school board that the deadline for filing applications would be August 12, and on August 16 the school board met to consider applications and to hire teachers for the 1977–1978 school term to begin on August 29. While at least some of the teachers had orally indicated that they desired to return for the ensuing school year, the school board apparently refused to offer the teachers a contract without a written application and the teachers refused to submit a written application as requested by the school board.[2]

No further action was taken until November 24, 1978, when the school board

2. The school board had not hired new teachers by August 16. Had either side conceded its position, which was seemingly one of principle rather than substance, this controversy could have been avoided.

moved for summary judgment. The teachers filed a return to the motion in which they moved for summary judgment as to liability on the basis of the depositions and the affidavits of the school board and asked that the matter of damages be submitted to the jury. A hearing was held on the motion of the school board on December 8, 1978, and on December 12 an order was issued granting the school board's motion. Judgment was entered on December 14. The teachers subsequently appealed to this court and have set forth two issues:

"I.

"Did the Court err in granting a Summary Judgment for the Defendants in a case where the Defendant school district, acting by and through the Defendant school board members, failed to offer contracts to teachers after the completion of the good faith negotiations process?

"II.

"In such a case is it a defense to the Defendant school district and Defendant board members that they acted under a mistaken impression of the law?"

In its order for summary judgment, the district court determined that the decision of this court in *Enstad v. North Central of Barnes Public School District No. 65*, 268 N.W.2d 126 (N.D.1978), rendered subsequent to the actions of the school board, could not have been known to the school board and could not result in the school board being held responsible for damages. The district court further determined that the actions of the school board "resulted from essential acts of governmental decision-making and in the exercise of discretion accorded to governmental boards and bodies for which said boards and bodies cannot be held responsible even though the decision reached be in error."

In *Enstad*, this court, faced with an appeal from a decision of the district court dismissing an action brought by a teacher who alleged that the school district had wrongfully failed to reemploy her after she had refused an offer of reemployment that required her to perform additional duties, had occasion to construe Section 15–47–27 and Chapter 15–38.1, N.D.C.C. In *Enstad*, negotiations between the teachers' representative organization and the school district were being held and contract offers were not delivered to the teachers until May 17. The school district did not give the teacher written notice on or before April 15 of a determination not to renew her contract nor did the school district give the teacher notice on or before April 15 of a date upon which she must accept or reject proffered reemployment. The teacher did not give written notice to the school district on or before May 15 of acceptance of reemployment. The teacher asserted she had a right to reemployment under Section 15–47–27, N.D.C.C., because the school district failed to give her written notice by April 15 of a determination not to renew her contract. The school district asserted the teacher lost her rights to reemployment under Section 15–47–27, N.D.C.C., because she failed to give notice of acceptance of the statutory offer of reemployment on or before May 15. This court interpreted Section 15–47–27 and Chapter 15–38.1, N.D.C.C., insofar as pertinent to this case, as follows:

(1) Section 15–47–27, N.D.C.C., imposes a duty upon the school board to give notice, on or before April 15, to all teachers of their duty to accept reemployment by the specified date;

(2) If negotiations are in progress, the thirty days within which the teacher must accept or reject re-employment does not commence to run until the teacher is actually given notice by the school board informing the teacher of a date upon which he is required to accept or reject proffered re-employment;

(3) If negotiations are being carried on pursuant to Chapter 15–38.1, N.D.C.C., the provisions of Section 15–47–27, N.D.C.C., requiring the board to give the teacher notice and requiring that the teacher respond to such notice, are suspended until those negotiations are completed.

The teachers argue that these interpretations in *Enstad* are dispositive of the issue of wrongdoing on the part of the school board and that the only issue remaining is that of damages. The school board has not challenged the holding in *Enstad*, but rather has only denied its application to this case insofar as the question of liability of the school board is concerned. Therefore, the issues in this appeal involve the application of *Enstad* to the issue of liability in this case and it is not our purpose to review that decision except to determine whether or not the school board should be held liable for damages because of the statutory interpretations reached in the decision of that case.

At first glance the *Enstad* decision may well appear to be dispositive of this issue. However, we must also consider the other decisions concerning the interpretation of Section 15–47–27, N.D.C.C., when negotiations were in process under Chapter 15–38.-1, N.D.C.C.

In *Huso v. Bismarck Public School Board*, 219 N.W.2d 100 (N.D.1974), this court considered an action for damages brought by a teacher against the school board for an alleged breach of contract. The teacher had been employed by the school board for the preceding school year but neither the school board nor the teacher sent written notice to the other. The teacher claimed that he had a contract by virtue of the operation of Section 15–47–27, N.D.C.C. But this court stated:

"The statute requires that the teacher desiring to renew must give written notice of acceptance. This is true whether the school district offers re-employment by action or nonaction of the school board

and, in the event of nonaction of the school board, this notification must be given on or before May 1st. The teacher failed to give written notice of acceptance. In such event the statute specifically provides:

'Failure on the part of the teacher to provide such notification shall relieve the school board * * * of the continuing contract provision of Section 15–47–26 through 15–47–28.' Section 15–47–27, N.D.C.C." 219 N.W.2d 105.

The court held the failure of the school board to give notice as provided in Section 15–47–27, N.D.C.C., constituted an offer to renew the teacher's contract for the ensuing school year and the failure of the teacher to provide the school board with notification of acceptance of that offer relieved the school board of the continuing contract provision of Section 15–47–27, N.D.C.C. *Huso* was distinguished in *Enstad* on the basis that no negotiations under Chapter 15–38.1, N.D.C.C., were in progress in *Huso*.[3]

In a case determined the next year, *Edgeley Education Association v. Edgeley Public School District*, 231 N.W.2d 826 (N.D.1975), the court was concerned with an appeal from a district court order dissolving a temporary restraining order and denying an application for a temporary injunction. The Edgeley Education Association, appellant, had requested the district court to issue a temporary injunction enjoining the Edgeley School Board from issuing contracts during the time negotiations were in progress and enjoining the school board from hiring any person to replace any teacher represented by the association. The court discussed the provisions of Section 15–47–27, Section 15–29–08(10) (autho-

---

**3.** While *Huso* and *Enstad* may be distinguishable on the basis that negotiations were not in progress in *Huso* whereas negotiations were in progress in *Enstad*, the *Enstad* decision also states:

"Providing negotiations have not been in progress, failure on the part of the school board to provide the teacher, prior to April 15, with notice of an acceptance date voids operation of the May 15 date under the statute by which the teacher must accept reemployment, and the teacher will have not less

than thirty days to accept proffered reemployment from the date the school board actually notifies the teacher of a date upon which acceptance must be made." 268 N.W.2d at 130.

In this respect *Enstad* must be considered as overruling *Huso*.

*Huso* involved the interpretation of Section 15–47–27, N.D.C.C., prior to the time it was amended to make the pertinent date May 15 rather than May 1. See, 1971 N.D.Sess.Laws, Ch. 158, Sec. 20; Ch. 190, Sec. 2.

rizing a school board to contract with teachers), and Chapter 15–38.1, N.D.C.C., and concluded:

"It becomes quite clear that the Legislature did not intend to either repeal or to amend by implication, or otherwise, any of the provisions of Section 15–47–27 and Section 15–29–08(10). The Legislature, in Section 15–38.1–14(2), N.D.C.C.,[4] employed language to insure that no such intent would be read into the provisions of Chapter 15–38.1, N.D.C.C. Whether this is wise or not is not for us to say. This court, in *Huso v. Bismarck Public School Board*, 219 N.W.2d 100 (N.D.1974), and in *Pollock v. McKenzie Public School District*, 221 N.W.2d 521 (N.D.1974), had under consideration the provisions of Section 15–47–27, N.D.C.C. The court gave no indication that the provisions of Section 15–47–27 were other than mandatory.

\* \* \* \* \* \*

"We have been urged by plaintiff to construe Chapter 15–38.1 so as to provide that when negotiations are in progress the provisions of Section 15–47–27, N.D.C.C., are suspended with reference to the school board. We are unable to find any language which permits this court to reach this conclusion, nor has any language been pointed out under which this court could place such a construction. To do so would require this court to legislate, which is a power vested in the Legislature and the people, but not in the court.

"As has been pointed out in the amicus brief, there is a dire need for legislation delineating and making appropriate adjustments between Chapter 15–38.1 and Section 15–47–27, N.D.C.C. Such adjustment would require legislation. It is also brought out that, depending upon the time element, the provisions of Section 15–47–27, N.D.C.C., in one instance may be an advantage to the school board, whereas in another instance the advantage could be in favor of the teacher. Likewise, a temporary restraining order and injunction can unduly tip the advantage to one or the other party." 231 N.W.2d at 832–833.

This court affirmed the trial court's order dissolving the temporary restraining order and refusing to grant a temporary injunction. Justice Vogel, dissenting in *Edgeley*, indicated he would reverse and remand with instructions to grant the injunction prayed for by the teachers' association because there is a duty to negotiate in good faith unrelated to the provisions of Section 15–47–27, N.D.C.C., and, if negotiations continued after May 15, as they did in *Edgeley*, Section 15–47–27, N.D.C.C., became irrelevant after that date.

In *Dickinson Education Association v. Dickinson Public School*, 252 N.W.2d 205 (N.D.1977), this court held that the provisions of Chapter 15–38.1, N.D.C.C., require the termination of a good faith negotiation process by the parties before a school board is permitted to make contractual offers to the teachers of its school system. *Dickinson* did not involve Section 15–47–27, N.D.C.C., but its conclusion obviously would prohibit a school board from making an affirmative offer of employment containing specific terms such as salary, etc., while negotiations are in progress concerning those terms. Thus a school board could make no such affirmative offer under Section 15–47–27, N.D.C.C.

Finally, in *Bottineau Public School District No. 1 v. Currie*, 259 N.W.2d 650 (N.D.1977), the court again considered the provisions of Section 15–47–27 and Chapter 15–38.1, N.D.C.C. In *Currie* the issue involved an acceptance by the teacher of an "offer" under the provision of Section 15–47–27, N.D.C.C., which section specifies that if the school board does not notify the teacher by April 15 of the date upon which he will be required to accept or reject proffered reemployment, the teacher is entitled to the usu-

---

4. Section 15–38.1–14(2), N.D.C.C., provides:

"2. Nothing contained herein is intended to or shall conflict with, contravene, abrogate, or diminish the powers, authority, duties, and responsibilities vested in boards of education by the statutes and laws of the state of North Dakota."

al written contract for the ensuing school year if he accepts that "offer" by May 15. The school board, quoting Section 15–47–27, N.D.C.C., had written the teacher:

" 'The law provides that on or before April 15 the School Board must notify you of its intention to renew your contract for next year.

" 'Because negotiations are still in progress as to the terms of the 1976–77 contracts, the Board has decided that it is not in a position to make a final offer at this time, and therefore will simply refrain from giving notice, thus creating the automatic statutory offer to renew on the same basis as last years contract, with the understanding that if negotiations shall result in an agreement either more or less favorable to you, when such an agreement has been reached by both negotiating parties, the Board will offer you a contract in accordance with such an agreement.

" 'However, in order for the Board to arrange for replacements of those of you who do not wish to remain with us next year, we ask that you kindly notify the Board at the earliest possible date.

" 'As provided by law, failure on your part to notify us of your acceptance of contract for next year on or before May 14, 1976, will constitute a rejection of the offer.' " 259 N.W.2d at 651.

The teacher had notified the school district of her "intent" to return " 'provided I do not get the job I was interviewed for at the junior college.' " Subsequently, the teacher took another position outside of the school system and the school board brought action for breach of contract and attempted to enforce the liquidated damage provision in the contract. This court held that the letter sent by the school board to the teachers was ambiguous and that the teacher, in turn, had indicated only an "intent" to return and that no contractual obligation was thereby created. The court also stated:

"The school board should not be faulted. The existence of section 15–47–27, NDCC, which has not been changed so as to make it always compatible with pro-

ceedings for negotiation of contract terms pursuant to Chapter 15–38.1, NDCC, has been the cause of a continuing series of disputes. We previously said that there was a dire need for legislation delineating and making appropriate adjustments between the two statutes. *Edgeley Education Association v. Edgeley Public School, Etc.*, 231 N.W.2d 826 (N.D.1975)." 259 N.W.2d at 654.

These cases, all decided prior to *Enstad*, indicate either expressly (*Huso* and *Edgeley*) or impliedly (*Currie*), that the provisions of Section 15–47–27, N.D.C.C., were not suspended during the period that negotiations were in process. Furthermore, *Huso* indicated that the provisions of Section 15–47–27, N.D.C.C., were automatic in that if a school board had not, by April 15, notified a teacher of its intent not to renew the contract, the teacher was entitled to the contract for the ensuing year if the teacher notified the school board of acceptance by May 15. It was not until the *Enstad* decision that this court determined a school board must give the teacher notice of a date on which he must accept employment, that if the school board fails to do so, it voids operation of the May 15 date, and that the teacher has thirty days from the date such notice is actually given to accept or reject employment. It was not until the *Enstad* decision that this court determined Section 15–47–27, N.D.C.C., was suspended during the period negotiations were in progress under Chapter 15–38.1, N.D.C.C. If, as this court indicated prior to *Enstad*, the provisions of Section 15–47–27, N.D.C.C., were not suspended when negotiations were in process, and if, as this court also indicated prior to *Enstad*, the failure of the school board to give notice by April 15 implemented the automatic offer provision of Section 15–47–27, N.D.C.C., which requires that a teacher must accept or reject the offer before May 15, the action of the school board in this instance would have been in accord with previous decisions. The school board's actions would not have been contrary to *Dickinson* because the school board made no affirmative offer such as *Dickinson* prohibited. Rather, the action of the school board

gave the teachers notice that because they had not accepted the automatic offer contained in Section 15–47–27, N.D.C.C., by May 15, 1977, the positions would be declared open. In the light of *Enstad* we now know this was improper.

Additionally, the district court, upon consideration of the request for a temporary injunction in this case, held that Section 15–47–27, N.D.C.C., was "self executing." No appeal was taken from the order denying the temporary injunction. The district court's interpretation of the provisions of Section 15–47–27, N.D.C.C., was obviously incorrect in light of *Enstad*. As we have already noted, however, *Enstad* was not decided until more than a year after the action of the school board in giving the notice of the vacancies and somewhat less than a year after the school board hired other personnel to fill those vacancies.

The district court's interpretation of Section 15–47–27, N.D.C.C., is not, of course, binding upon this court. But that interpretation and the decisions of this court prior to *Enstad* are strong factors to be considered in determining whether or not the school board is responsible for damages in this instance.

In *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214, reh. den. 421 U.S. 921, 95 S.Ct. 1589, 43 L.Ed.2d 790 (1975), the United States Supreme Court considered the liability of school board members for actions filed by students who claimed that under 42 U.S.C. § 1983 (1974) their federal constitutional due process rights were infringed by their expulsion from high school.

Justice White, speaking for five members of the United States Supreme Court, stated:

"Liability for damages for every action which is found subsequently to have been violative of a student's constitutional rights and to have caused compensable injury would unfairly impose upon the school decisionmaker the burden of mistakes made in good faith in the course of exercising his discretion within the scope of his official duties. School board members, among other duties, must judge whether there have been violations of school regulations and, if so, the appropriate sanctions for the violations. Denying any measure of immunity in these circumstances 'would contribute not to principled and fearless decision-making but to intimidation.' *Pierson v. Ray, supra*, [386 U.S. 547] at 554, [87 S.Ct. 1213, at 1218, 18 L.Ed.2d 288]. The imposition of monetary costs for mistakes which were not unreasonable in the light of all the circumstances would undoubtedly deter even the most conscientious school decisionmaker from exercising his judgment independently, forcefully, and in a manner best serving the long-term interest of the school and the students. The most capable candidates for school board positions might be deterred from seeking office if heavy burdens upon their private resources from monetary liability were a likely prospect during their tenure." 420 U.S. at 319–320, 95 S.Ct. at 999–1000, 43 L.Ed.2d at 223–224.

Justice White declared the standard for immunity from liability for damages under 42 U.S.C. § 1983 (1974), to be as follows:

"The disagreement between the Court of Appeals and the District Court over the immunity standard in this case has been put in terms of an 'objective' versus a 'subjective' test of good faith. As we see it, the appropriate standard necessarily contains elements of both. The official himself must be acting sincerely and with a belief that he is doing right, but an act violating a student's constitutional rights can be no more justified by ignorance or disregard of settled, indisputable law on the part of one entrusted with supervision of students' daily lives than by the presence of actual malice. . . . Therefore, in the specific context of school discipline, we hold that a school board member is not immune from liability for damages under section 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the

malicious intention to cause a deprivation of constitutional rights or other injury to the student. That is not to say that school board members are 'charged with predicting the future course of constitutional law.' *Pierson v. Ray*, 386 U.S., at 557 [,87 S.Ct. 1213, 1219]. A compensatory award will be appropriate only if the school board member has acted with such an impermissible motivation or with such disregard of the student's clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith." 420 U.S. at 321–322, 95 S.Ct. at 1000–1001, 43 L.Ed.2d at 224–225.

Justice Powell, writing for four members of the Court, dissented from that part of the opinion holding liable for damages a school board member who was found—after the fact—to have acted in ignorance of "settled, indisputable law." He believed the holding imposed too severe a standard in that "settled, indisputable law" and "unquestioned constitutional rights" were not likely to be self-evident to constitutional law scholars—much less the average school board member. 420 U.S. at 329, 95 S.Ct. at 1004, 43 L.Ed.2d at 229.

This case does not involve an action under 42 U.S.C. § 1983 (1974), nor does it involve constitutional questions. However, because it does involve interpretation of statutory provisions, the standard imposed by the majority of the United States Supreme Court in *Wood* can logically be applied to this case.[5] In view of the decisions of our court prior to *Enstad* we do not conclude that the law was "settled" or "indisputable"; rather, the previous decisions of this court specifically state that the statutes are in conflict and that legislative action is needed to resolve that conflict. *Edgeley*, as we have

previously discussed, specifically held that Section 15–47–27, N.D.C.C., was not repealed or amended, by implication or otherwise, and its operation was not suspended during negotiations under Chapter 15–38.1, N.D.C.C.

The teachers argue that in their brief to the district court on the issue of the temporary injunction in July of 1977, they "forecast" the decision in *Enstad.* That brief is a part of the record before this court and we agree that the teachers did construe Section 15–47–27 and Chapter 15–38.1, N.D.C.C., in a manner substantially similar to the constructions subsequently adopted by this court in *Enstad.* But, a reading of that brief reveals that the teachers agreed that construction was "unclear from a reading of the statutory language." The interpretation by the teachers was based on this court's decision in *Dickinson* and, they argue, there is no real distinction between the issuance of contracts to the teachers in the school district during the good faith negotiation process and the complete "opening" of all teaching positions within the school district. However, as we have also already discussed, the contracts in *Dickinson* contained specific terms that were still under negotiation between the teachers and the school board, whereas in the instant case, the teachers were simply notified that they would have to apply for their positions on the basis of Section 15–47–27, N.D.C.C. While *Enstad* has subsequently proven the teachers right and the school board wrong in their interpretations of the applicable statutes, even the district court was misled by the decisions of this court prior to *Enstad.* This is shown by the court's action in denying the request for the temporary injunction on the basis that Section 15–47–27, N.D.C.C., was "self-executing." If Section

---

5. Both parties have cited *Kitto v. Minot Park District*, 224 N.W.2d 795 (N.D.1974), in their arguments on immunity of public officials. *Kitto* does contain language that exempts governmental units from liability for those acts that are discretionary in character. Because the facts in *Kitto* do not indicate that an interpretation of statutory law was involved in the action of the park board, we do not find that decision as pertinent to this case as we do

*Wood.* Although *Wood* concerned the liability of individual board members, in this case we also find its rationale analogous to the board as a public entity. However, it is not our intention in citing *Wood* to establish a precedent that standards applicable to 1983 actions will necessarily be applied to future teacher-school board disputes that do not involve personal claims against school board members or teachers.

15–47–27, N.D.C.C., had been "self-executing," as the district court concluded and as the decisions prior to *Enstad* had implied, the letter from the school board to the teachers did nothing more than inform them of that interpretation. In this respect the letter was substantially different from the one sent to the teachers by the school board in *Dickinson*, wherein the school board contended negotiations were terminated when they were not. Here there was no indication that the school board intended to do anything other than submit the matter to the State Fact Finding Commission and continue negotiations after that commission had made its recommendations.

Under the facts of this case we conclude that the school board is entitled to immunity from liability for damages on the grounds of mistaken impression of the law because the statutes were ambiguous, because the statutes were previously construed to mean that Section 15–47–27, N.D.C.C., was operative even while negotiations were in progress under Chapter 15–38.1, N.D.C.C., and because these statutory provisions were not clarified by this court until after the actions complained of had taken place.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.