Kevin COLES and Francine Kuznia, Plaintiffs and Appellants,

v.

GLENBURN PUBLIC SCHOOL DISTRICT NO. 26, Defendant and Appellee.

Civ. No. 880263.

Supreme Court of North Dakota.

Feb. 20, 1989.

Chapman & Chapman, Bismarck, for plaintiffs and appellants; argued by Michael J. Geiermann.

Pearce & Durick, Bismarck, for defendant and appellee; argued by Gary R. Thune.

ERICKSTAD, Chief Justice.

Kevin Coles and Francine Kuznia have appealed from a district court order denying their petition for a writ of mandamus requiring the school board of Glenburn Public School District No. 26 to issue teacher contracts to them based upon the previous year's terms and conditions. We affirm as to Kuznia. As to Coles, we affirm in part, reverse in part, and remand for a determination of damages.

Coles was employed by the District for the 1987–1988 school year as a teacher, head boys basketball coach, and athletic director. Kuznia was employed by the Dis-

trict for the 1987–1988 school year as a teacher, fifth and sixth grade girls basketball coach, and girls volleyball coach. On April 11, 1988, the District decided to open to applicants the positions of head boys basketball coach, athletic director, and volleyball coach.

On April 15, 1988, Coles was offered a contract for the next school year. The contract did not include the head boys basketball coaching position, for which he had been paid $1,908.52 during the 1987–1988 school year, or the athletic director position, for which he had been paid an additional $636.17 during the 1987–1988 school year. The contract also reduced Coles' base teaching salary by one-seventh. The contract offered to Kuznia on April 15, 1988, did not include the volleyball coaching position, for which she had been paid $795.22 in the 1987–1988 school year.

Coles and Kuznia sued to get contracts with the previous year's terms and conditions, alleging breach of contract and violation of their rights under §§ 15–47–27 and 15–47–38, N.D.C.C. On appeal from denial of their petition for a writ of mandamus, Coles and Kuznia contend that the district court erred in concluding: (1) that the District could reduce their contracts without a nonrenewal hearing; (2) that the reductions in their contracts were not severe; and (3) that the District could reduce their contracts despite a negotiated agreement requiring mutual agreement for changing teacher contracts.

A petitioner for a writ of mandamus must show "a clear legal right to the performance of the particular act sought to be compelled" and we will not overturn the denial of a writ unless the trial court abused its discretion. *Bradley v. Beach Pub. Sch. Dist. No. 3*, 427 N.W.2d 352 (N.D.1988).

The relevant nonrenewal procedures are contained in §§ 15–47–27 and 15–47–38, N.D.C.C. Section 15–47–27, N.D.C.C., provides:

"*15–47–27. Time for renewal of teachers' contracts.* Any teacher ... shall be notified in writing by the school board ... not later than May first ... of the determination not to renew the teacher's contract for the ensuing school year, if such determination has been made; and failure to give such written notice on or before said date shall constitute an offer to renew the contract for the ensuing school year under the same terms and conditions as the contract for the then current year. On or before May first in any year ... all teachers shall be notified of a date ... upon which they will be required to accept or reject proffered reemployment, and failure on the part of the teacher to accept said offer within such time shall be deemed to be a rejection of the offer. Any teacher who shall have accepted the offer of reemployment, either by the action or nonaction of the school board or the director of institutions, on or before May first, as herein provided, shall be entitled to the usual written contract for the ensuing school year...."

Section 15–47–38(5), N.D.C.C., provides:

"5. The school board of any school district contemplating not renewing a teacher's contract, as provided in section 15–47–27, shall notify the teacher in writing of such contemplated nonrenewal no later than April fifteenth. The teacher shall be informed in writing of the time, which shall not be later than April twenty-first, and place of a special school board meeting for the purpose of discussing and acting upon such contemplated nonrenewal. The teacher shall also be informed in writing of the reasons for nonrenewal.... The reasons given by the board for not renewing a teacher's contract must be sufficient to justify the contemplated action of the board and may not be frivolous or arbitrary but must be related to the ability, competence, or qualifications of the teacher as a teacher, or the necessities of the district such as lack of funds calling for a reduction in the teaching staff.... At the meeting, the board shall discuss the reasons and determine whether or not the administrator has, in fact, substantiated the reasons. If the board

finds that the reasons have not been substantiated, the nonrenewal proceedings will be dismissed...."

In *Enstad v. North Cent. of Barnes Pub. Sch. Dist. No. 65*, 268 N.W.2d 126 (N.D.1978), a teacher was offered a contract with the same teaching assignments which she had, plus a coaching assignment, which she refused. This court construed § 15–47–27, N.D.C.C., at 268 N.W.2d at 134:

"We construe Section 15–47–27, N.D. C.C., to require that the school board's offer of reemployment must be a reasonable offer made in good faith. The offer of reemployment cannot impose unreasonable terms, conditions, or changes in assignments from those in the teacher's current contract. However, this section does not grant a teacher the right to an offer of reemployment consisting of the identical contract as the teacher possesses during the current school term. This section does not divest the school board of its authority to make changes in assignments of classes or extracurricular duties in its role of operating and maintaining the school system."

This court further explained *Enstad, supra,* and the construction of §§ 15–47–27 and 15–47–38, N.D.C.C., in *Quarles v. McKenzie Pub. Sch. Dist. No. 34*, 325 N.W. 2d 662, 667 (N.D.1982):

"Our decision in *Enstad, supra,* should be read to permit a school board to assign new duties and classes for which the teacher is qualified or to remove duties and classes without the necessity of following the procedure specified for nonrenewal of a teacher's contract in Sections 15–47–27 and 15–47–38, N.D.C.C. ... However ... when the adjustment of duties results in a severe reduction in salary for *curricular activities* the nonrenewal procedures must be followed." (Emphasis added in last sentence.)

█ With regard to the athletic director position, it is apparent that the District treated that position as part of Coles' teaching load or it would not have reduced Coles' base teaching salary by one-seventh when it did not assign that position to Coles. We therefore decline to treat the athletic director position as an extracurricular activity. The athletic director position was so intertwined with Coles' curricular duties that we will not distinguish it from his curricular activities. In our view, the one-seventh reduction in Coles' base teaching salary accompanying the loss of his position as athletic director was a "severe reduction in salary for curricular activities" [1] (*Quarles, supra,* at 667), requiring that the nonrenewal procedures of §§ 15–47–27 and 15–47–38, N.D.C.C., be followed.

█ With regard to the coaching positions of both Coles and Kuznia, however, the District was not required to follow the nonrenewal procedures in removing those assignments. Those coaching positions were clearly extracurricular.[2] The Dis-

1. While some members of this court would hold that any reduction in salary for curricular activities that is not de minimis is severe, we need not adopt that theory because a reduction of one-seventh is clearly severe.

The trial court said that "based upon the determination in *Quarles* that a one-sixth reduction in salary was not a 'severe' reduction, it appears that the reductions imposed here cannot qualify as 'severe.'" We note that in *Quarles,* however, unlike here, a nonrenewal hearing was held.

2. Section 15–47–26, N.D.C.C., defines "teacher" to include "all teachers, principals, and superintendents" as used in §§ 15–47–27 and 15–47–28 and to include "all teachers and principals" as used in § 15–47–38. Coaching has been held not to be teaching, and therefore not subject to nonrenewal or continuing contract provisions. *See, e.g., Irwin v. Board of Educ. of Sch. Dist.*

*No. 25,* 215 Neb. 794, 340 N.W.2d 877 (1983); *Neal v. School Dist. of York,* 205 Neb. 558, 288 N.W.2d 725 (1980); *Stang v. Independent Sch. Dist. No. 191,* 256 N.W.2d 82 (Minn.1977); *Chiodo v. Board of Educ. of Special Sch. Dist. No. 1,* 298 Minn. 380, 215 N.W.2d 806 (1974); *Matter of Hahn,* 386 N.W.2d 789 (Minn.App.1986). We need not decide whether the nonrenewal procedures are never applicable to coaches. *See* the concurring opinion of Chief Justice Krivosha in *Neal v. School Dist. of York, supra,* 288 N.W.2d at 728:

"It is conceivable to me that one may be employed with the title of 'coach' and in fact be a teacher intended to be protected under the provisions of section 79–1254, R.R.S.1943. It is not beyond the realm of possibility that larger school districts may employ an individual whose principal duty and basis of employment is his ability to teach athletes how to

trict's offers of contracts to Coles and Kuznia without those positions and reassignment of the positions to other applicants were reasonable offers made under the District's "authority to make changes in assignments of classes or extracurricular duties in its role of operating and maintaining the school system." *Enstad, supra,* 268 N.W.2d at 134.

Coles and Kuznia contend that by the following language in a negotiated master contract, the District "has bargained away the right to change the offer of re-employment to the teachers:"

> "Any changes to a teacher's contract will be by mutual agreement with the teacher and the administration. These assignments will be stated on teacher's contracts."

We agree with the district court's conclusion that "such language clearly and unambiguously refers to changes to a teacher's current contract." The language is inapplicable to offers for new contracts for subsequent school years.

We conclude that with regard to the coaching positions of both Coles and Kuznia, the District was not required to follow the nonrenewal procedures in removing those assignments and the district court's order is affirmed with respect to those positions. With regard to Coles' loss of his position as athletic director, the District

was required to follow the nonrenewal procedures of §§ 15–47–27 and 15–47–38, N.D. C.C. It is, however, too late for an effectual writ of mandamus. "[W]here the remedial writ of mandamus can no longer be issued in time, and if granted will not be effectual, *i.e.,* where the school year has already been completed, the action must be remanded to the trial court to determine the compensatory damages to which the teacher is entitled." *Selland v. Fargo Pub. Sch. Dist. No. 1,* 285 N.W.2d 567, 575 (N.D.1979).

The order appealed from is affirmed with regard to the coaching positions of both Coles and Kuznia. The order is reversed with regard to Coles' position as athletic director and the matter is remanded for a determination of the compensatory damages to which Coles is entitled.

VANDE WALLE and GIERKE, JJ., concur.

MESCHKE and LEVINE, JJ., concur in result.

---

perform in an athletic event and to fill in the remainder of the 'teacher's time' with courses in driver's education or something similar.... Whether the provisions of section 79–1254, R.R.S.1943, apply or not should not depend upon whether the individual is called 'teacher' or 'coach.' The deciding factor should be what the principal basis of the employment was, what function was principally to be performed by the school employee, and whether the employee has the right to refuse the assignment."

The District has indicated that a bill was introduced and defeated in the 1983 session of the

Legislature which would have made the nonrenewal procedures applicable to coaches and extracurricular functions. While "[c]ourts look to subsequent enactments and amendments as aids in arriving at the correct meaning of a prior statute" [*Johnson v. Wells County Water Resource Board,* 410 N.W.2d 525, 529 (N.D.1987)], "public policy is declared by the action of the legislature not by its failure to act" [*James v. Young,* 77 N.D. 451, 43 N.W.2d 692, 698 (1950)]. *See also State ex rel. Spaeth v. Eddy Furniture Co.,* 386 N.W.2d 901, 904–905 n. 4 (N.D.1986).