Fern WENMAN, Petitioner
and Appellant,

v.

The CENTER BOARD OF the VALLEY
CITY MULTI–DISTRICT VOCATIONAL
CENTER, Respondent and Appellee.

Civ. No. 900395.

Supreme Court of North Dakota.

June 3, 1991.

Chapman & Chapman, Bismarck, for petitioner and appellant; argued by Michael Geiermann.

Pearce & Durick, Bismarck, for respondent and appellee; argued by Gary R. Thune.

GIERKE, Justice.

Fern Wenman appeals from a district court judgment dismissing her petition for a writ of mandamus against the Center Board of the Valley City Multi–District Vocational Center [Board]. We reverse and remand for further proceedings.

Wenman was employed by the Board during the 1989–1990 school year as a vocational guidance counselor for a total salary of $23,397. Her contract for the school year included an assignment by the Board of an additional two weeks, i.e., 10 working days, more than the regular term of 180 days. The two weeks of additional time were spent performing counseling and preparatory work and consisted of "four days at all-service conference, one day at inservice," and "five days for financial aid for program planning." Wenman was compensated for this additional time under a formula set forth in a Two–Year Negotiated Agreement [Agreement] between the

Board and its teaching staff covering the 1989–1990 and 1990–1991 school years:

"D. Regular contract teachers whose contract involves more than a regular term of 180 days or nine months are to be paid according to the following schedule for such additional time assigned:

"1. 1/36th of instructor's base and increment on vertical salary schedule. Additional time to include four days at Summer Conference and one additional day approved by Director.

"2. 1/36th of instructor's base and increment on vertical salary schedule for each additional week contracted."

Under this formula, Wenman received $1,200 above her base salary for the two weeks of additional time assigned to her by the Board.

On December 5, 1989, a statewide referral election resulted in the defeat of three tax measures. Faced with a seven percent reduction in state funding, the Board discussed the elimination of all extended contracts as one of the ways of cutting its budget. The director of the Board met with members of the teaching staff in February 1990 and discussed "off-contract" payment of expenses and salaries for attendance at summer conferences and in-service days, in an attempt to avoid elimination of all extra pay. Compensation for off-contract days is provided for in the following provision of the Agreement:

"The following amounts will be paid for non-contract days outside the contract period for activities involving teaching oriented activities called for by the Director.

"Each non-school day activity not involving an extended day (8 hrs.) or overnight stay = $25.00.

"Each non-school day activity involving an extended day (8 hrs.) or overnight stay = $50.00."

In March 1990 the Board voted to eliminate all extended contracts and authorized the use of off-contract pay when necessary.

In May 1990 the Bureau offered Wenman a contract for the 1990–1991 school year which provided for a base salary of $23,639, plus an additional $175 for summer conference and $25 for one in-service day pursuant to the off-contract provisions of the Agreement, for a total salary of $23,839. No "additional time" was assigned and Wenman's counseling time was reduced by five days from the previous contract. Because of an automatic incremental increase in her base salary, Wenman received an overall increase in her salary for the 1990–1991 school year. However, because of the elimination of "additional time" and use of off-contract pay for summer conference and in-service days, Wenman's 1990–1991 contract resulted in a reduction of $1,025, or four percent, from her previous 1989–1990 contract.[1]

Wenman commenced this action seeking a writ of mandamus ordering the Board to issue a contract to her for the 1990–1991 school year based on the same terms and conditions as her 1989–1990 contract. Wenman asserted that the $1,025 reduction in salary constituted a "severe reduction" of her contract which required compliance by the Board with the nonrenewal provisions of § 15–47–38, N.D.C.C., under this court's decision in *Coles v. Glenburn Public School Dist. 26*, 436 N.W.2d 262 (N.D.1989).

Following a hearing, the trial court determined that the four percent reduction in Wenman's 1990–1991 contract did "not constitute a severe reduction in salary for curricular activities, particularly when viewed in the light of budget and salary cuts being received throughout state and local government, including the Governor's request for a 10% cut in this Court's budget, in the aftermath of the December 5, 1989 referral election." The court further determined that "[s]alary reductions of from 4% to 7% of a total package may be deemed reasonable, and therefore not severe, in times of economic difficulties such as those confronting public school boards in the spring

---

1. Wenman ultimately attended summer conference and was paid the additional $175. She did not attend the in-service day, which took place the same day as the district court hearing in this case.

of 1990." The court dismissed her petition for a writ of mandamus and Wenman appealed.

■ The prerequisites for the issuance of a writ of mandamus are well established. The petitioner must show that she has no plain, speedy, and adequate remedy in the ordinary course of the law and that she has a clear legal right to the performance of the particular act sought to be compelled by the writ. *Feldhusen v. Beach Public School Dist. 3*, 423 N.W.2d 155, 157 (N.D.1988); *Fargo Educ. Ass'n v. Paulsen*, 239 N.W.2d 842, 844 (N.D.1976). This court will not overturn a trial court's denial of a writ of mandamus unless the trial court has abused its discretion. *Bradley v. Beach Public School Dist. No. 3*, 427 N.W.2d 352 (N.D.1988).

Wenman asserts that the Board was required to comply with the nonrenewal procedures of § 15–47–38, N.D.C.C., in order to reduce her 1990–1991 contract by four percent. We agree.

■ In *Enstad v. North Central of Barnes Public School, Etc.*, 268 N.W.2d 126 (N.D.1978), this court first addressed whether a teacher's reemployment rights under our continuing contract law, § 15–47–27, N.D.C.C., are complied with when a school board offers a contract containing changes of assignments. In *Enstad*, an English and physical education teacher refused to accept a contract of reemployment which required her to accept, in addition to the duties she had performed the previous year, an assignment of coaching girls' basketball. In holding that the offer was reasonable under the circumstances, we said:

"We construe Section 15–47–27, N.D.C.C., to require that the school board's offer of reemployment must be a reasonable offer made in good faith. The offer of reemployment cannot impose unreasonable terms, conditions, or changes in assignments from those in the teacher's current contract. However, this section does not grant a teacher the right to an offer of reemployment consisting of the identical contract as the teacher possesses during the current school term. This section does not divest the school board of its authority to make changes in assignments of classes or extracurricular duties in its role of operating and maintaining the school system. If the school board makes a reasonable, good faith offer of reemployment to the teacher, the teacher can choose to accept or reject such offer. If the teacher rejects the reasonable offer she has no further reemployment rights under Section 15–47–27, N.D.C.C. If the school board's offer of reemployment is unreasonable the teacher can reject such offer and, upon doing so, continue to have an enforceable right to reemployment against the school board under Section 15–47–27, N.D.C.C." *Enstad, supra*, 268 N.W.2d at 134.

Four years later, in *Quarles v. McKenzie Public School Dist. No. 34*, 325 N.W.2d 662, 667 (N.D.1982), this court addressed the interplay between a teacher's continuing contract rights under § 15–47–27 and the nonrenewal provisions of § 15–47–38, N.D.C.C.:

"Our decision in *Enstad, supra*, should be read to permit a school board to assign new duties and classes for which the teacher is qualified or to remove duties and classes without the necessity of following the procedure specified for nonrenewal of a teacher's contract in Sections 15–47–27 and 15–47–38, N.D.C.C. We believe these powers are necessarily implied in the authority given to school boards by Section 15–29–08(2), N.D.C.C., to 'organize, establish, operate, and maintain such elementary and high schools as it [the school board] may deem requisite and expedient, ...' However, we agree with the rationale of the Washington Supreme Court in *Barnes [v. Seattle Sch. Dist. No. 1*, 88 Wash.2d 483, 563 P.2d 199 (1977)], that when the adjustment of duties results in a severe reduction in salary for curricular activities the nonrenewal procedures must be followed. It is apparent to us that salary is, for most persons, the single most significant portion of a contract. To expect a teacher to accept or reject a contract with a severe reduction in salary for

curricular activities, without providing the teacher with a nonrenewal hearing as required by Section 15–47–38(5), N.D.C.C., is to ignore that fact. It would permit to be accomplished indirectly, without a hearing, what cannot legally be accomplished directly without a hearing."

Most recently, in *Coles v. Glenburn Public School Dist. 26*, 436 N.W.2d 262 (N.D.1989), we further addressed the application of the continuing contract and nonrenewal statutes. In that case, appellant Coles had been employed as a teacher, head boys' basketball coach, and athletic director while appellant Kuznia had been employed as a teacher, fifth and sixth grade girls' basketball coach, and girls' volleyball coach. The contract offered to Coles for the next school year did not include the head boys' basketball coaching position, for which he had been paid more than $1,900, or the athletic director position, for which he had been paid more than $600, and reduced his base teaching salary by one-seventh. The contract offered to Kuznia did not include the volleyball coaching position.

We held that the District was not required to follow the nonrenewal procedures in removing the coaching positions of Coles and Kuznia because those positions were "clearly extracurricular." *Coles, supra*, 436 N.W.2d at 264 [Footnote omitted]. We also held, however, that the District was required to follow the nonrenewal provisions in removing Coles' position as athletic director:

> "[I]t is apparent that the District treated that position as part of Coles' teaching load or it would not have reduced Coles' base teaching salary by one-seventh when it did not assign that position to Coles. We therefore decline to treat the athletic director position as an extracurricular activity. The athletic director position was so intertwined with Coles' curricular duties that we will not distinguish it from his curricular activities. In our view, the one-seventh reduction in Coles' base teaching salary accompanying the loss of his position as athletic director was a 'severe reduction in salary for

curricular activities' ... requiring that the nonrenewal procedures of §§ 15–47–27 and 15–47–38, N.D.C.C., be followed." *Coles, supra* [Footnote omitted].

In this case the Board asserts that because the Agreement, when read as a whole, establishes that the regular school term is 180 days [*see* § 15–47–33, N.D.C.C.], and because the Agreement authorizes the Board to provide additional pay only "for such additional time assigned," Wenman had no right to be assigned any additional time beyond 180 days for the 1990–1991 school year. In effect, the Board asks us to conclude as a matter of law that any contracted curricular duties performed by a teacher beyond the basic 180–day contract year are not covered by the provisions of our continuing contract law.

In *Issaquah Educ. Ass'n v. Issaquah School District*, 104 Wash.2d 443, 706 P.2d 618 (1985), the Washington Supreme Court, in a 6–3 decision, ruled that school districts could use an "extended days supplemental contract" for compensating employees who performed additional professional duties beyond the basic 180–day school year, and that such contracts could lawfully be reduced without compliance with Washington's continuing contract statute. The court's decision in *Issaquah* was based on a Washington statute which specifically exempted supplemental contracts, *i.e.*, any contract requiring employees to perform duties not stated in the basic 180–day contract, from coverage under the continuing contract provisions. The court concluded that, based on this statute, the "Legislature intended the procedural protections contained in the continuing contract statute to apply only to nonrenewal of the basic [180–day] employment contract." *Issaquah, supra*, 706 P.2d at 623.

*Issaquah* is distinguishable. Unlike Washington, North Dakota has no comparable statutory provision expressly exempting contracts for duties performed beyond the 180–day school year from coverage under the continuing contract law.

We conclude that the assignment of compensation for duties performed beyond the

basic 180–day school year are subject to our continuing contract law. The Board in this case does not dispute that Wenman's "additional time" duties were curricular in nature. Wenman performed counseling and preparatory work during the "additional time," for which she was compensated on a scale commensurate with her base 180–day salary. The Agreement does not expressly exempt "additional time" from the continuing contract law. Although the Board had authority to assign the "additional time," it could not eliminate or reduce that time without complying with the continuing contract law.

 The Board also asserts that nonrenewal proceedings were not required in this case because Wenman's four percent loss of salary was not a "severe reduction in salary for curricular activities" [*Quarles, supra*, 325 N.W.2d at 667], especially since the Board was faced with a seven percent cut in state funding. But we have recognized that "salary is, for most persons, the single most significant portion of a contract." *Quarles, supra.* We believe the severity of a reduction in salary must be viewed from the perspective of the teacher who suffers the reduction. If Wenman's 1990–1991 contract had not been reduced, she would have received $24,839 rather than the $23,814 she did receive. Wenman's salary is not at such a high level that a $1,025 reduction could not be considered a "severe reduction" by her or by another teacher in similar circumstances. We conclude that Wenman's four percent salary reduction was a "severe reduction" which required the Board to comply with the nonrenewal provisions of § 15–47–38, N.D.C.C. While the seven percent cut in state funding faced by the Board may have been a reasonable and primary factor for reducing Wenman's contract, that consideration required substantiation at a nonrenewal hearing. *See Belcourt v. Fort Totten Public School District*, 454 N.W.2d 703, 707 (N.D.1990).

We conclude that the Board was required to follow the nonrenewal procedures in reducing Wenman's teaching contract for the 1990–1991 school year, and that the trial court therefore abused its discretion in refusing to grant the writ of mandamus. Because the school year has already been completed, it is too late for an effectual writ of mandamus. *Coles, supra*, 436 N.W.2d at 265. Accordingly, we remand to the trial court to determine the compensatory damages to which Wenman is entitled. *See Coles, supra; Selland v. Fargo Public School District No. 1*, 285 N.W.2d 567, 575 (N.D.1979).

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.