2016 ND 42

**WILLISTON EDUCATION ASSOCIATION, Plaintiff and Appellee**

v.

**WILLISTON PUBLIC SCHOOL DISTRICT NO. 1, Defendant and Appellant.**

**No. 20150256.**

Supreme Court of North Dakota.

Feb. 18, 2016.

Michael J. Geiermann (argued), Bismarck, ND, for plaintiff and appellee.

Rachel A. Bruner–Kaufman (argued) and Andrew L. Askew (appeared), Bismarck, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1]   The Williston Education Association ("WEA") sued the Williston Public School District No. 1 ("District") on behalf of Williston middle school teachers.   The WEA claimed the District owed teachers compensation for extra classes they taught during the 2012–2013 school year.   The district court awarded summary judgment in favor of the WEA. The District appeals. We reverse the summary judgment and remand for trial.

I

[¶2] The WEA represents public school teachers in Williston. The WEA and the District negotiated an Agreement for the 2011–2013 school years. The Agreement contained a provision that stipulated middle school teachers who agreed to be assigned to teach more than six class periods were entitled to extra compensation. The Agreement states: "A 7–8 grade teacher who consents to be assigned more than six (6) class periods shall receive 1/7th of his/her schedule salary for the seventh class period."

[¶3] During the 2011–2012 school year, most middle school teacher's schedules consisted of five curriculum-based class periods, a team time period, a prep period, and a prime time period. During the team time period, teachers were allotted time to meet with the other teachers on their team. During their prep period, teachers were allowed to prepare for their curriculum-based class periods. During prime time, teachers facilitated what was essentially a home-base period for the students. The Agreement did not define the terms "class period," "team time," "prep period," or "prime time." In 2011–2012, three teachers gave up their prep period and taught six curriculum-based periods; they received 1/7th of their salary as extra compensation. In 2012–2013, the District amended the middle school schedule in anticipation of an influx of students. The District added a curriculum-based class period, shortened the prime time period, and discontinued team time. The teachers who received extra compensation in 2011–2012 did not receive extra compensation in 2012–2013.

[¶4] The Agreement the parties negotiated contains a provision entitled "Grievance Procedure." The grievance provision defines a grievance as "an alleged violation, interpretation or application of any specific provision of the negotiated agreement or conditions of employment." It also defines the duties of a teacher when he or she has a grievance. It states: "In the event of a grievance, the teacher shall . . . ." The provision then sets forth eight steps teachers must follow to pursue a grievance.

[¶5] The WEA sent a grievance letter to the District superintendent on behalf of the teachers. The letter asserted the District owed middle school teachers extra compensation because they were required to teach more than six classes after the District amended the schedule. The superintendent responded to the letter. She declined to review the merits of the grievance. She stated the grievance was untimely and submitted by an improper party. She asserted the grievance should have been filed by individual teachers rather than the WEA. The WEA then sent a grievance letter to the president of the District. The president responded: "The grievance received is not valid since a teacher did not file it. . . . Since WEA does not have standing on this matter there will be no further communication regarding this issue."

[¶6] The WEA then filed suit in district court; it asserted the District breached the Agreement and owed teachers additional compensation because the extra class period added in the 2012–2013 school year resulted in teachers teaching more than six class periods. The parties filed cross-motions for summary judgment. The underlying dispute was whether prime time constituted a "class period" under the terms of the Agreement. If the court interpreted "class period" to include prime time, the District would owe teachers additional compensation because they taught six or more class periods plus prime time during the 2012–2013 school year. If prime time was not a "class period," the

majority of teachers only taught six class periods; the District would not owe them extra compensation.

[¶ 7] Each party argued the District's past practice of paying teachers who taught an additional class in 2011–2012 supported their position. The WEA claimed the District paid these teachers extra because they were teaching six curriculum-based classes plus prime time—i.e. they were teaching more than six "class periods." Prime time must have been treated as a class period to qualify for extra pay under the Agreement. The District argued it paid the teachers extra because they gave up their prep period—i.e. it contended the parties never considered prime time a "class period." The district court interpreted "class period" to include prime time. It awarded summary judgment in favor of the WEA and ordered the District pay damages to the teachers. The District filed a timely appeal.

## II

[¶ 8] The District argues the court erred when it granted the WEA's motion for summary judgment because (1) the WEA filed its suit before individual teachers brought a timely grievance under the Agreement's grievance policy, and (2) the court's interpretation of "class period" to include prime time was incorrect.

[¶ 9] "Teacher contracts are subject to the same statutory rules of interpretation as other contracts of employment." *Mandan Educ. Ass'n v. Mandan Pub. School Dist. No. 1,* 2000 ND 92, ¶ 9, 610 N.W.2d 64.

The purpose of contract interpretation is to find the "mutual intention of the parties as it existed at the time of contracting." NDCC 9–07–03. If those intentions may be determined from the writing alone, the contract is not ambiguous. NDCC 9–07–04; *National Bank of Harvey. v. International Harvester Company,* 421 N.W.2d 799 (N.D.1988). According to NDCC 9–07–02, if the contract is unambiguous, the language of the contract governs any dispute.

*Williston Educ. Ass'n v. Williston Pub. School Dist. No. 1,* 483 N.W.2d 567, 570 (N.D.1992). The contract, as a whole, is to be taken together so as to give effect to every part. N.D.C.C. § 9–07–06. "Particular clauses of a contract are subordinate to its general intent." N.D.C.C. § 9–07–15. *See also Grinnell Mut. Reinsurance Co. v. Center Mut. Ins. Co.,* 2003 ND 50, ¶ 10, 658 N.W.2d 363.

[¶ 10] Agreements between teacher associations and school districts must also be read in light of the comprehensive statutory framework governing those relations. Individual teachers have a statutory right to form or join a teacher association "for the purpose of representation on matters of employer-employee relations." N.D.C.C. § 15.1–16–07. Teacher associations have a corresponding statutory right to represent the teachers who have formed or joined the association. N.D.C.C. § 15.1–16–08. The scope of representation includes "matters relating to the terms and conditions of employment and employer-employee relations, including salary and working hours." N.D.C.C. § 15.1–16–09. Teacher associations and school boards must negotiate disputes over existing contracts in good faith:

The board of a school district or its representatives and the representative organization or its representatives *shall,* if requested by either entity, meet at reasonable times and *negotiate in good faith regarding:*

    a. The terms and conditions of employment.

    b. Employer-employee relations.

c. Formation of a contract, which may contain a provision for binding arbitration.

d. *The interpretation of an existing contract.*

N.D.C.C. § 15.1–16–13(1) (emphasis added). Good faith means "an honest intention to abstain from taking any unconscientious advantage of another even through the forms or technicalities of law...." N.D.C.C. § 1–01–21.

### A

■ [¶ 11] The District argues the grievance provision in the Agreement and the doctrine of exhaustion of administrative remedies preclude the WEA from bringing suit. It asserts that under the terms of the Agreement, individual teachers must file grievances before the WEA can bring an action to enforce the Agreement in court. The District claims because the WEA is not a "teacher" its attempt to grieve was invalid, and the grievance process was never followed. The Agreement's grievance provision states:

A grievance shall mean an alleged violation, interpretation or application of any specific provision of the negotiated agreement or conditions of employment. In the event of a grievance, the teacher shall....

The Agreement then goes on to discuss the steps required to pursue a grievance. Thus, the Agreement clearly defines "grievance" and sets forth the duties of individual teachers when a grievance occurs. But, the grievance procedure is silent about whether the WEA may file a grievance. The District argues the "teacher shall" language means only teachers, individually or collectively, may utilize the grievance process—not the WEA.

[¶ 12] "The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable. Each clause is to help interpret the others." N.D.C.C. § 9–07–06. The Agreement's prefatory language expressly states the "School Board recognizes the Williston Education Association to be the appropriate negotiating unit for the teachers of the Williston Public School District # 1." It also states:

The representatives of the Board shall meet with the representatives of the Association for the purposes of discussion and attempting to reach mutually satisfactory agreements relating to terms and conditions of employment and employer-employee relations, including but not limited to, salary, hours, and other terms and conditions of employment.

We conclude the "teacher shall" language in the grievance policy does not prohibit the WEA from utilizing the grievance procedures set forth in the Agreement when the grievance effects the terms and conditions of a majority of the teachers and concerns the interpretation of the Agreement, which the WEA negotiated on their behalf; such a restrictive reading would effectively ignore the purpose for the Agreement as set forth by the parties.

■ [¶ 13] The District also asserted the WEA's grievance was filed too late. It claims the 10–day limitation period found in the grievance policy had lapsed. According to the grievance policy, "The decision of the Board of Education is final." In a letter to the WEA, the District president wrote: "Since WEA does not have standing on this matter there will be no further communication regarding this issue." After the WEA's attempts at negotiating with the District failed, it filed a law suit. Nothing in the Agreement prohibits the WEA from bringing a legal action after a grievance has been denied or negotiations have failed. *See Williston Educ. Ass'n,* 483 N.W.2d at 573 (Vande-Walle, J., concurring) (bringing suit before

negotiating discredits the negotiation process, but school boards and teacher associations may ask courts to resolve a controversy between them after negotiations have failed). We conclude the district court had jurisdiction over this case.

## B

[¶ 14] Although neither party disputes the underlying facts in the case, they argue for conflicting interpretations of the Agreement as it applies to these facts. The underlying dispute was whether prime time constitutes a "class period" under the terms of the Agreement. The WEA claims it does; the District claims it does not. The Agreement does not define "class period." In an effort to resolve this ambiguity, the district court examined various depositions given by school administrators and teachers. After examining this extrinsic evidence, the court concluded the term "class period" encompasses prime time, and it granted the WEA's motion for summary judgment.

A contract is ambiguous when rational arguments can be made for different positions about its meaning. Whether or not a contract is ambiguous is a question of law that we independently review on appeal. If a contract is ambiguous, extrinsic evidence may be considered to determine its meaning.

. . . .

An ambiguity resolved by the use of extrinsic evidence is a question of fact for the trial court to decide.

*Williston Educ. Ass'n*, 483 N.W.2d at 570 (citations omitted).

[¶ 15] "Even if the facts are undisputed, summary judgment may not be granted if reasonable differences of opinion exist as to the inferences to be drawn from those facts. However, issues of fact become issues of law if reasonable persons could reach only one conclusion from the facts." *Hamilton v. Woll*, 2012 ND 238, ¶ 9, 823 N.W.2d 754 (citation omitted). "On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law." *Wenco v. EOG Res., Inc.*, 2012 ND 219, ¶ 8, 822 N.W.2d 701 (quoting *Arndt v. Maki*, 2012 ND 55, ¶ 10, 813 N.W.2d 564). Whether summary judgment was properly granted is a question of law that this Court reviews de novo. *Wenco*, at ¶ 8.

[¶ 16] Although the underlying facts in this case are not disputed, differing reasonable inferences can be drawn from them. The contracts signed by the teachers who received extra pay in 2011–2012 indicate that each shall serve "as a TEACHER an additional period"—language which does not resolve, but points out, the ambiguity under the Agreement. Deposition testimony suggests various reasons have been given for why some teachers were paid additional compensation in 2011–2012. Neither party disputes that teachers were paid extra; but both dispute the reason for the extra pay. It is unclear how the changes to the time and curricular content of "prime time" may have affected the analysis of whether it was or remained a "class period." The past dealings between the parties illuminate their expectations of one another but not as a matter of law warranting summary judgment. "Course of dealings is ordinarily a question of fact." *Mandan Educ. Ass'n*, 2000 ND 92, ¶ 9, 610 N.W.2d 64. Consequently, reasonable differences of opinion exist as to the inferences to be drawn from the undisputed facts in this case. When the court can reasonably draw conflicting inferences from undisputed facts, summary judgment is improper. We conclude the district court erred when it granted the WEA's motion for summary judgment.

The trial court must resolve these issues of fact.

### III

[¶ 17] The Agreement does not preclude the WEA from utilizing the grievance procedure or filing suit after negotiations have failed. But summary judgment, for either party, was improper. We reverse the summary judgment and remand for trial.

[¶ 18] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, S.J., LISA FAIR McEVERS and DANIEL J. CROTHERS, JJ., concur.

[¶ 19] The Honorable WILLIAM A. NEUMANN, S.J., sitting in place of SANDSTROM, J., disqualified.