# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2026 ND 47

David Christianson,

Plaintiff and Appellant

v.

Grand Forks Public School District,

Defendant and Appellee

### No. 20250329

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Kristi P. Venhuizen, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Michael J. Geiermann, Bismarck, ND, for plaintiff and appellant.

Rachel A. Bruner, Bismarck, ND, for defendant and appellee.

# Christianson v. Grand Forks Public School District
## No. 20250329

**Crothers, Justice.**

[¶1]   David Christianson appeals an order granting summary judgment in favor of the Grand Forks Public School District. Christianson claims the district court misapplied the law when it determined his director contracts were extracurricular and when it granted summary judgment in favor of the School District. We affirm the judgment of the district court.

I

[¶2]   During the 2023-24 school year, Christianson had a teacher contract and two "director contracts," one for Pep Band Director and another for Music-Instrumental Head Director at Grand Forks Red River High School. Christianson was formally reprimanded after two pranks occurred at the 2024 Red River High School graduation practice and ceremony under his supervision. He was reassigned to a different school and his director contracts were not renewed. Christianson brought his grievance through the four-level grievance procedure. At the final level, a formal hearing was held. At the hearing the School Board denied his level-four appeal. At the following meeting, the School Board voted to approve a written decision of their prior action. The written decision was required by the grievance procedure, but was not issued by the August 7, 2024 deadline. The written decision was provided two days late, and after Christianson lodged a formal objection to the missed deadline. Christianson sued in district court, claiming the School District failed to follow the required nonrenewal procedures, entitling him to damages. The School District claimed Christianson could not sue because he failed to arbitrate the grievance, as the School District claimed the grievance procedure required. Both parties moved for summary judgment. The court determined the School District waived its ability to require arbitration by failing to follow the notice requirements. The court granted summary judgment in favor of the School District, determining

Christianson's director contracts were extracurricular and did not require statutory nonrenewal procedures. Christianson appeals.

## II

[¶3] This Court's standard of review of a summary judgment is well established:

> Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*McMahon v. Sanford*, 2025 ND 184, ¶ 10, 27 N.W.3d 478 (citing *Krebsbach v. Trinity Hosps., Inc.*, 2020 ND 24, ¶ 7, 938 N.W.2d 133).

[¶4] "Teacher contracts are subject to the same statutory rules of interpretation as other contracts of employment." *Williston Educ. Ass'n v. Williston Pub. Sch. Dist. No. 1*, 2016 ND 42, ¶ 9, 876 N.W.2d 437. "The interpretation of a contract to determine its legal effect is a question of law, which is fully reviewable on appeal." *Melaas v. Diamond Resorts U.S. Collection Dev., LLC*, 2021 ND 1, ¶ 15, 953 N.W.2d 623.

> The purpose of contract interpretation is to find the mutual intention of the parties as it existed at the time of contracting. If those

intentions may be determined from the writing alone, the contract is not ambiguous. If the contract is unambiguous, the language of the contract governs any dispute.

*Williston Educ. Ass'n*, ¶ 9 (cleaned up).

III

[¶5] The School District claims the district court erred when it determined Christianson was not required to exhaust all contractual remedies before suing in district court. The grievance procedure requires a teacher to go through various steps if their grievance is not resolved. This process begins with notifying his or her supervisor, and ends at a formal appeal to the School Board. The procedures require "[i]n the event the teacher and school board are unable to resolve any grievance, the grievance may be submitted to arbitration as defined herein." The district court determined the "School District waived the right to require Christianson to proceed with arbitration when it did not comply with the timelines outlined in the grievance policy." The School District claims the district court misapplied the law in determining arbitration was not required.

[¶6] The School District argues the district court should have determined the School Board substantially complied with the grievance policy, like the defendants in *Stensrud v. Mayville State Coll.*, 368 N.W.2d 519 (N.D. 1985). The School District argues though the board gave Christianson verbal notice, rather than timely written notice, "[g]enerally, substantial compliance with procedural requirements for termination is sufficient if their purpose is fulfilled." *Id.* at 522. In *Stensrud*, oral notice to a college instructor substantially complied with the written notification requirement. *Id.* at 522-23. However, in *Stensrud*, the "substantial compliance" was with the termination procedures in the North Dakota State Board of Higher Education Policy Manual. The Board's policy is not a contract. Section 15-10-13, N.D.C.C., grants the State Board of Higher Education power so they "may establish, all necessary rules and regulations for the government of the school." Because the decision in *Stensrud* was rooted in Board policy instead of contract, the "substantial compliance" analysis from that

3

case is not useful in resolving the current dispute. *See Cuozzo v. State*, 2019 ND 95, ¶¶ 8-17, 925 N.W.2d 752 (discussing substantial compliance with the Board of Higher Education policy); *Retzlaff v. Grand Forks Pub. Sch. Dist. No. 1*, 424 N.W.2d 637, 640-41 (N.D. 1988) (discussing whether there was substantial compliance with the statutory procedures after firing a public-school teacher).

[¶7]   Here, the alleged violation of the grievance procedure was contractual, negotiated as part of the collective bargaining agreement. *See* 2023-2025 Teacher Negotiated Agreement 16 ("The grievance procedure shall be stated in Board Policy 4120 and shall not be changed without the mutual agreement of the Association and the Board.").

[¶8]   "The existence of waiver generally is a question of fact." *Pfeifle v. Tanabe*, 2000 ND 219, ¶ 18, 620 N.W.2d 167. Likewise, whether a contract has been substantially performed is a factual question. *Pegg v. Kohn*, 2015 ND 79, ¶ 12, 861 N.W.2d 764 (citing *Abelmann v. Smartlease USA, L.L.C.*, 2014 ND 227, ¶ 16, 856 N.W.2d 747). However, when the facts are not in dispute, questions of fact can become questions of law. *Grengs v. Grengs*, 2023 ND 239, ¶ 22, 999 N.W.2d 218 (citing *First Nat. Acceptance Co. v. Bishop*, 187 S.W.3d 710, 714 (Tex. App. 2006); *Ross v. Texas One P'ship*, 796 S.W.2d 206, 210 (Tex. App. 1990)).

[¶9]   The undisputed facts before the district court were as follows: a hearing was held for Christianson's level four grievance; the School Board denied Christianson's appeal and he was present at the hearing; Christianson was not present at the following meeting where the School Board approved the written decision it drafted; the written decision was not issued by the August 7, 2024 deadline as required by the grievance procedure; the written decision instead was issued two days later, after Christianson lodged a formal written objection to the failure to comply with the contractual requirements.

[¶10] The district court made the legal determination the requirement to provide written notice was "not a 'courtesy' but a requirement" of the policy. The court determined because a timely written decision was not issued, the School District did not properly perform. The court determined the School District waived its

4

ability to enforce any arbitration requirement because of its failure to first comply with contractual requirements. The court did not err in determining the School Board's failure to timely deliver a written decision to Christianson violated the negotiated agreement and waived the School District's right to require arbitration.

IV

[¶11] Christianson claims the district court misapplied the law in determining the director contracts were extracurricular and granting summary judgment in favor of the School District. He claims the court should have determined his director contracts were curricular. He argues the holdings in *Coles v. Glenburn Pub. Sch. Dist. No. 26*, 436 N.W.2d 262 (N.D. 1989) and *Wenman v. Ctr. Bd. of Valley City Multi-Dist. Vocational Ctr.*, 471 N.W.2d 461 (N.D. 1991) were misapplied by the court.

[¶12] Chapter 15.1-15, N.D.C.C., provides the continuing contract rights for teachers. This chapter grants teachers the right to certain procedures when their curricular contracts are not renewed. The nonrenewal protections in N.D.C.C. ch. 15.1-15, "do[] not divest the school board of its authority to make changes in assignments of classes or extracurricular duties in its role of operating and maintaining the school system." *Quarles v. McKenzie Pub. Sch. Dist. No. 34*, 325 N.W.2d 662, 664 (N.D. 1982). "[W]hen the adjustment of duties results in a severe reduction in salary for *curricular* activities the nonrenewal procedures must be followed. *Id.* at 667 (emphasis added). The threshold question for whether Christianson is entitled to the nonrenewal procedures is whether his director contracts were curricular or extracurricular.

[¶13] In *Coles*, the plaintiff had a contract as a teacher, coach, and athletic director. 436 N.W.2d at 262-63. He sued the school district for failure to follow the nonrenewal procedures when his contracts for the following year did not include the coach or athletic director positions, and reduced his base salary. *Id.* This Court held:

5

> "[W]hen the adjustment of duties results in a severe reduction in salary for *curricular activities* the nonrenewal procedures must be followed." (Quoting *Quarles,* 325 N.W.2d at 667.) With regard to the athletic director position, it is apparent that the District treated that position as part of Coles' teaching load or it would not have reduced Coles' base teaching salary by one-seventh when it did not assign that position to Coles. We therefore decline to treat the athletic director position as an extracurricular activity. The athletic director position was so intertwined with Coles' curricular duties that we will not distinguish it from his curricular activities. In our view, the one-seventh reduction in Coles' base teaching salary accompanying the loss of his position as athletic director was a "severe reduction in salary for curricular activities" (*Quarles,* 325 N.W.2d at 667), requiring that the nonrenewal procedures . . . be followed.

*Id.* at 264 (cleaned up). This Court held although the coaching position was extracurricular, the athletic director position was curricular and required the nonrenewal procedures now codified in N.D.C.C. ch. 15.1-15. *Id.* at 265. Christianson argues his director roles were "intertwined" with the curriculum taught in his classroom, just like in *Coles* where the athletic director position duties were "intertwined" with the teaching duties so that they could not be distinguished.

[¶14] In *Wenman,* a school counselor had a 10-day extended contract for work outside of the 180-day school term. 471 N.W.2d at 461. State budget cuts led to local cuts and the board terminated all extended contracts. *Id.* at 462. This resulted in Wenman losing four percent of her pay from the contract. This Court determined the extended contract was curricular and nonrenewal proceedings were required. *Id.* at 464-65. Christianson argues *Wenman* was not just about a reduction in curricular duties, but that a court also should consider the amount of reduction in pay in determining whether a contract is curricular. In *Wenman,* this Court:

> [R]ecognized that "salary is, for most persons, the single most significant portion of a contract." *Quarles,* 325 N.W.2d at 667. We believe the severity of a reduction in salary must be viewed from the

perspective of the teacher who suffers the reduction. If Wenman's 1990-1991 contract had not been reduced, she would have received $24,839 rather than the $23,814 she did receive. Wenman's salary is not at such a high level that a $1,025 reduction could not be considered a "severe reduction" by her or by another teacher in similar circumstances. We conclude that Wenman's four percent salary reduction was a "severe reduction" which required the Board to comply with the nonrenewal provisions . . . .

*Id.* at 465 (cleaned up).

[¶15] Christianson's teaching contract for the 2023-24 school year was signed on June 16, 2023. The contracts for the pep band director position and the music-instrumental head director position were both signed on September 11, 2023. The teaching contract did not require Christianson be offered or accept either director position. The compensation in the teaching contract did not depend on the director contracts, and the director contracts provide their own additional duties and compensation. On their face, the director contracts are separate from the teaching contract and were extracurricular.

[¶16] Christianson argues the holding in *Coles* requires the determination his director contracts are curricular because the district court determined the teaching and director contracts were "intertwined." Although the court stated director roles are "intertwined" with teaching music classes, it meant something different than what this Court referred to in *Coles*. The reasoning in *Coles* is based on the contractual nexus between the athletic director position and the teaching position. The school district in *Coles* "treated [the athletic director] position as part of Coles' teaching load or it would not have reduced Coles' base teaching salary by one-seventh when it did not assign that position to Coles." 436 N.W.2d at 264. The requirements from *Coles* are clear—if extracurricular activities are included as part of the teaching contract, the removal of the extracurricular contract constitutes a change in the base teaching contract, implicating the nonrenewal protections. Here, no connections exist between the duties and compensation of the teaching contract and the duties and compensation of the extracurricular director contracts. The lack of additional teaching duties during

7

the school day would also suggest the director contracts were extracurricular, not curricular.

[¶17] Christianson argues the holding in *Wenman*, recognizing how salary reductions in the teaching contract required nonrenewal procedures, means the district court erred in ruling in favor of the School District and determining the contracts were extracurricular. However, *Wenman* is not applicable to these facts. In *Wenman*, the question was not whether the contract was reduced, but whether the overall impact of the salary reduction was severe enough to require nonrenewal procedures. 471 N.W.2d at 462-63. The parties in *Wenman* did not dispute the contracts were curricular. *Id.* at 465. Here, *Wenman* is not controlling because Christianson's music director contracts were extracurricular and their termination did not result in a reduction of salary under his teaching contract.

[¶18] The district court did not err granting summary judgment in favor of the School District or when it determined Christianson's two director contracts were extracurricular.

V

[¶19] We have considered the parties' other arguments and conclude they are unnecessary for our decision or are without merit. We affirm the judgment of the district court.

[¶20] Lisa Fair McEvers, C.J.
Daniel J. Crothers
Jerod E. Tufte
Jon J. Jensen
Douglas A. Bahr